| | |
|---|---|
| R.K.C.J., LLC, Plaintiff<br>v.<br>Texas Republic Bank, N.A., Defendant | IN THE UNITED STATES DISTRICT COURT FOR THE<br>NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION<br>Docket No. 3:20-cv-00848-N |

## FIRST AMENDED COMPLAINT

### NATURE OF CLAIM

1. This is a proceeding for monetary damages to redress the deprivation of rights secured to plaintiff by the Civil Rights Act of 1871, 42 U.S.C. § 1981, and to achieve redress for violation of the provisions of the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq.

### JURISDICTION and VENUE

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1343(3) , 1343(4) and 1345, conferring original jurisdiction upon this court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, , under 42 U.S.C. § 1981, and under 42 U.S.C.§3614. Venue is proper pursuant to 28 U.S.C. §1391.

3. Plaintiff, R.K.C.J., LLC, is a Texas limited liability company, existing and organized to do business at 1801 E. Wheatland Road, Dallas, Texas 75241. Plaintiff is owned by Robert J. Pitre and Katrina Pire 100%. ("Pitres"). The Pitres are of African American descent. Defendant, Texas Republic Bank, N.A., is a banking organization, organized and existing in the State of Texas. Defendant may be served by serving its registered agent for service process, David Baty, 2595 Preston Rd., #100, Frisco, Texas 75034.

### STATEMENT OF FACTS

4. Defendant (Mr. Pitre) is a black landowner and businessman, residing in the Oak Cliff neighborhood of Dallas, Texas. Mr. Pitre's driver's license shows an address in Dallas, Texas. Mr. Pitre owns two companies: Skyview Ranch, LLC ("Skyview Ranch") and R.K.C.J., LLC. ("RKCJ"). Skyview Ranch is a recreational ranch with approximately 64 acres used for marriages, family reunions, birthday celebrations, and other like events in an 8400 square foot facility with banquet hall, food service, bar, and media center. RKCJ holds real estate holdings, including the 64-acre ranch leased for nominal consideration to Sky-View and other properties in Southern Dallas. These extensive land acquisitions are primarily in the area known locally as "South Dallas," being primarily South of downtown Dallas. The Pitres, as the sole owners of the Plaintiff, had a credit score of 775. The Pitres had over $200,000 cash in hand from selling a partial interest in one of their numerous properties to Texas Central Railroad & Infrastructure, Inc. ("Texas Central). RKCJ through the Pitres sought to refinance an existing loan that is held by Hancock-Whitney Bank, N.A., located in Louisiana. Hancock-Whitney, after the acquisition of the loan by acquiring Mid-South Bank, N.A., had asked Mr. Pitre to move his existing $1.6 million dollar

loan, and the grantor's lien associated with it, elsewhere because they were unfamiliar with the Dallas market. Mr. Pitre's goal was also to attain a better interest rate and obtain $200,000.00 in operating capital for his business.

5. Mr. Pitre chose to apply for a loan with Defendant, Texas Republic Bank, with locations in Frisco, Texas and Richardson, Texas.  Mr. Pitre chose Texas Republic Bank for various reasons, namely they advertise "competitive interest rates" on their website and recordings when dialing by phone. Additionally, Texas Republic Bank is new to the DFW Metroplex. As stated previously, Mr. Pitre is an experienced businessman and has worked with many of the banks in the area. Similarly, he chose Texas Republic Bank because he had worked with other banks in the area and believed Texas Republic Bank, being smaller,  would offer more transparency in the lending process, and being new to the market, would likely be more aggressive in offering competitive terms.

6. On or about January 14, 2020, Defendant met with Plaintiff thru its commercial bank officer, Mr. Daniel Nam, to review land holdings and improvements owned by Plaintiff that Plaintiff sought to refinance the  existing $1.6 million dollar loan held by Hancock Whitney Bank, N.A., as successor to Mid-South Bank, N.A., and also obtain an additional $200,000 line of credit. During this meeting, Defendant was provided, for purposes of credit qualification, with a representation to be verified by Defendant that his credit rating was excellent (over 775), and documentation of the Plaintiff's myriad the real estate holdings, attached hereto as Exhibits A and A-1. The bulk of these unimproved and improved real estate assets are free and clear of liens and add up to over $15 million in value.

7. The very next day, January 15, 2020, for further credit qualifications, Plaintiff thru his attorney sent to Defendant, c/o Mr. Daniel Nam,  transmittals attached hereto as Exhibits "B" and "C" , appropriately redacted to delete personal identification tax numbers, of the tax returns for the previous three years for **Defendant and the personal** principals that own 100% of the membership interest of Defendant.  These tax returns showed substantial earnings from sales of real estate over the past three years more than $2.4 million.

8. Plaintiff was also provided with an appraisal of the 65 acres owned by Defendant, conducted by Mid-South Bank, the predecessor bank to the current bank, Hancock-Whitney, which appraised the land and improvements more than $10 million dollars. Defendant would receive full assignment of lien against said land as collateral for the loan thru the assumption documents. Said appraisal is attached hereto as Exhibit "E".

9. Plaintiff also advised that it move some of its bank deposits to the Defendant more than $200,000 from receipt of the above Texas Central option proceeds.

10. Plaintiff also provided Defendant, c/o Mr. Daniel Nam, with a partially executed option agreement, dated December 2019,  with the representation that it had been completely executed and partially funded, where Defendant had sold a 27 acre tract listed in the financials to the Texas Central Railroad for an aggregate consideration of $3 million dollars, of which $600,000 had already been advanced, and another $400,000 would be advanced In July 2020, with the balance due December 31, 2020 in the amount of $2,000,000. The fully executed agreement, along with proof of the $600,000 payment, is attached hereto as Exhibit "D".

11. In response to this application, Defendant, through Mr. Nam, responded by email with additional questions about rental payments, again requested tax documents, and in this same email, without response to questions by Defendant, Mr. Nam informed Plaintiff that, while the loan was still in

underwriting and more information was needed, any loan provided would need to additionally be secured by a complete assignment of the option agreement with the Texas Railroad Commission (Exhibit "D) and an additional guaranty for Skyview Ranch. In summary, this would be interpreted to mean that Texas Republic Bank was requiring $13 million in real property lien and collateral to secure the refinancing of $1.6 million existing loan and lien, and a line of credit of $200,000.

12. Mr. Pitre has extensive experience with the loan application process, with real property transactions, and contractual negotiations. Based on his experience with banks, and negotiations, in the past Mr. Pitre took great offense to the terms provided, and the process used by Mr. Nam. Mr. Pitre refused Texas Republic Bank's terms in considering offering him a loan for which he was qualified, but with terms that were outrageous to any reasonable person. Mr. Pitre reasonably concluded that the offensive terms were meant as a rejection of his application, since no reasonable person in the same facts would accept the terms.

13. Mr. Pitre's skin color, address, and the location of his real property are not typical of applicants in the Frisco, Texas area based on demographics of the City of Frisco. The current population estimate for the City of Frisco is 197,454, with 47,603 of those residents being school-aged. (www.friscotexas.gov). The median household income for residents of Frisco is $131,989. *Id.* 67.2% of the population in Frisco, Texas is White. (www.census.gov/quickfacts/friscocitytexas). Residents of Frisco whose sole race, like Mr. Pitre, is Black is 7.9% and those residents who are comprised of two or more races is 3.6%. *Id.* The city's labor-force population was 70.2%. *Id.*

14. The city of Dallas, Texas has a population estimate of 1,343,573 with 33.1% being school-aged, as of July 1, 2019. (www.census.gov/quickfacts/fact/table/dallascitytexas) The racial demographics of the City of Dallas compromised of 62.5% White residents and 24.3% Black residents. *Id.* Residents whose race is comprised of two or more races is 2.5%. *Id.* 68.3% of the population of Dallas is in the labor-force. *Id.* The median household income (in 2018 dollars), from 2014-2018 in Dallas, Texas was $50,100. *Id.*

15. It is safe to assume the area surrounding Texas Republic Bank, located in an upscale shopping area, Stonebriar Center, does not match the demographic of Mr. Pitre. Similarly, it would be safe to assume that most of the customers who secure loans at Texas Republic Bank do not own land in "South" Dallas. When making small talk with Daniel Nam, the commercial loan officer, and quasi underwriter, at Texas Republic Bank, Plaintiff inquired as to the origin of his name. Mr. Nam explained it is of Japanese descent. It is commonly known that some people of Japanese descent believe that they are a superior race, based on the history of their nation and the American takeover of such after World War II. Mr. Nam's onerous offer of credit to Mr. Pitre, without completing underwriting, and without all the information requested, is outwardly discriminatory to him, as an applicant. Defendant, through Mr. Nam's offer, obviously wanted Mr. Pitre to take his business elsewhere. There can be no other conclusion that Mr. Pitre was discriminated against because of his race, and the stigma that surrounds his neighborhood, property, and the African Americans in Dallas.

16. When Mr. Nam was requested to confirm the onerous terms provided by email in writing, Defendant chose to reply that Plaintiff had withdrawn its loan application rather than clarify, specify and repeat the onerous terms that were provided in the email correspondence.

## FIRST COUNT

17. Plaintiff repeats and realleges each allegation in paragraphs 4-16 as though set forth herein in full.

18. Plaintiff believes that the onerous terms provided would not have been provided to any Anglo Borrower of similar means and credit qualifications of Plaintiff. The Defendant's actions, as described in this complaint, constituted discrimination on the basis of race, or national origin, with respect to credit transactions in violation of 15 USC § 1691(a)(1) (Equal Credit Opportunity Act, or "ECOA"), and Plaintiff is an aggrieved person as defined in the Equal Credit Opportunity Act, and Plaintiff has suffered damages as a result of defendant's conduct as described in this complaint.

19. The Defendant's actions were discriminatory practices that were intentional and willful and were with deliberate disregard for the rights of Plaintiff as an African American.

## SECOND COUNT

20. Plaintiff repeats and realleges each allegation in paragraphs 4 through 16 as though set forth herein in full.

21. Defendant's Loan Officer Daniel Nam, who took Mr. Pitre's information and was aware of his minority-owned business status participated in the underwriting and decision-making process in regard to Plaintiff's loan, in violation of 15 U.S.C. § 1691c-2(d)(1) (Equal Credit Opportunity Act, or "ECOA"), and Plaintiff is an "minority-owned business" as defined by the statute. Plaintiff has suffered damages because of Defendant's conduct described in this complaint.

22. The Defendant's actions were discriminatory practices that were intentional and willful and were with deliberate disregard for the rights of Plaintiff as an African American owned enterprise.

## THIRD COUNT

23. Plaintiff repeats and realleges each allegation in paragraphs 4 through 16 as though set forth herein in full.

24. The offer to provide a refinancing with collateral almost 10 times the value of the requested loan is discouragement, in violation of 12 C.F.R. § 202.4(b) of the Equal Credit Opportunity Act (ECOA), which provides "a creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application."

25. The Defendant's actions were meant to discourage Plaintiff, or any reasonable person, from pursuing a loan based on Plaintiff's race as an African American, the location of his property in a predominantly Black neighborhood, and possibly his age.

## FOURTH COUNT

26. Plaintiff repeats and realleges each allegation in paragraphs 4 through 10 as though set forth herein in full.

27. Defendant has intentionally discriminated against plaintiff in this contractual negotiation based on Plaintiff's race or national origin, in violation of the Civil Rights Act of 1871, 42 U.S.C. §1981 causing actual damages, pain, suffering, and humiliation as a result of the conduct described in this complaint.

WHEREFORE, plaintiff respectfully requests that this court grant the following relief:

1. Enter a judgment that the acts and practices of defendant complained of herein are in violation of the laws of the United States and the State of Texas.
2. Award plaintiff compensatory and punitive damages.
3. Award plaintiff the costs of this action, together with reasonable attorney's fees.
4. Grant plaintiff such other and further relief as to this court appears necessary and proper.

>Respectfully submitted,
>
>/s/ Kevin S. Wiley, Sr.
>Wiley Law Group, PLLC
>Texas State Bar No. 21470700
>325 N. St. Paul Street, Ste. 2250
>Dallas, Texas 75201
>(214) 537-9572 (M)
>(972) 498-5717 (FAX)
>kwiley@wileylawgroup.com
>COUNSEL FOR PLAINTIFF,
>R.K.C.J., LLC

CONFORM THE DECLARATION TO THE COMPLAINT.

| | |
|---|---|
| R.K.C.J., LLC, Plaintiff<br>v.<br>TXRB Holdings, Inc. DBA<br>Texas Republic Bank, N.A., Defendant | IN THE UNITED STATES DISTRICT COURT FOR THE<br><br>NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION<br><br>Docket No. 3:20-cv-00848-N |

## DECLARATION OF ROBERT J. PITRE

STATE OF TEXAS §
§
COUNTY OF DALLAS §

**ROBERT J. PITRE,** pursuant to the provisions of U.S.C. § 1746, declares, under the penalty of perjury, as follows:

(1) "My name is Robert J. Pitre. I am, together with my wife, Katrina Pitre, the owner of 100% of the Plaintiff, R.K.C.J., LLC. We are both of African American descent.

PLAINTIFF OWNS EXTENSIVE PROPERTY IN SOUTH DALLAS, PART OF WHICH IS CALLED "SKYLINE RANCH." PLAINTIFF IS QUALIFIED TO OBTAIN CREDIT AND CREATES A GREAT DEAL OF ITS REVENUE FROM THE SALE OF REAL PROPERTY HOLDINGS IN THE SOUTHERN PART OF DALLAS, TEXAS. PLAINTIFF IS 71 YEARS OLD AND HAS BEEN INVOLVED IN REAL PROPERTY AND CONTRACTUAL NEGOTIATIONS SURROUNDING SUCH FOR A LARGE NUMBER OF YEARS. PLAINTIFF HAS EXPERIENCE OBTAINING LOANS IN THE DFW METROPLEX FOR A SIMILAR AMOUNT OF TIME. PLAINTIFF WAS ASKED TO MOVE HIS LOAN TO ANOTHER BANK AFTER IT WAS BOUGHT-OUT BY A NEW FINANCER UNFAMILIAR WITH DFW. PLAINTIFF SOUGHT TO FIND A MORE COMPETITIVE RATE AND OPERATING CAPITAL FOR HIS BUSINESS.

JANUARY 14, 2020, DEFENDANT MET WITH PLAINTIFF THROUGH ITS REPRESENTATIVE, COMMERCIAL LOAN OFFICER MR. DANIEL NAM. THIS MEETING WAS TYPICAL, THE PARTIES MADE SMALL TALK AND DISCUSSED PLAINTIFF'S NEEDS. PLAINTIFF EXPLAINED IT WANTED TO REVIEW LAND HOLDINGS AND IMPROVEMENTS OWNED BY PLAINTIFF THAT PLAINTIFF SOUGHT TO REFINANCE AN EXISTING $1.6 MILLION DOLLAR HELD BY HANCOCK WHITNEY BANK, N.A., AS SUCCESSOR TO MID-SOUTH BANK, N.A., AND ALSO OBTAIN AN ADDITIONAL $200,000 LINE OF CREDIT. DURING THIS MEETING, DEFENDANT WAS PROVIDED WITH DOCUMENTATION OF THE PLAINTIFF'S MYRIAD THE REAL ESTATE HOLDINGS, ATTACHED HERETO AS EXHIBITS A AND A-1. THE BULK OF THESE UNIMPROVED AND IMPROVED REAL ESTATE ASSETS ARE FREE AND CLEAR OF LIENS AND ADD UP TO OVER $15 MILLION IN VALUE. DEFENDANT WAS ALSO ADVISED THAT I HAD EXCELLENT CREDIT WHICH COULD BE VERIFIED WITH A CREDIT SCORE IN EXCESS OF 775.

THE VERY NEXT DAY, JANUARY 15. 2020, PLAINTIFF THRU HIS ATTORNEY SENT TO DEFENDANT, C/O MR. NAM, TRANSMITTALS ATTACHED HERETO AS EXHIBITS "B" AND "C" , APPROPRIATELY REDACTED TO DELETE PERSONAL IDENTIFICATION TAX NUMBERS, OF THE TAX RETURNS FOR THE PREVIOUS THREE YEARS FOR DEFENDANT AND THE PERSONAL PRINCIPALS THAT OWN 100% OF THE MEMBERSHIP INTEREST OF DEFENDANT. THESE TAX RETURNS SHOWED SUBSTANTIAL EARNINGS FROM SALES OF REAL ESTATE OVER THE PAST THREE YEARS IN EXCESS OF $2.4 MILLION.

PLAINTIFF ALSO PROVIDED DEFENDANT, C/O MR. NAM, WITH A PARTIALLY EXECUTED OPTION AGREEMENT, DATED DECEMBER 2019, WITH THE REPRESENTATION THAT IT HAD BEEN COMPLETELY EXECUTED AND PARTIALLY FUNDED, WHERE DEFENDANT HAD SOLD A 27 ACRE TRACT LISTED IN THE FINANCIALS TO THE TEXAS CENTRAL RAILROAD & INFRASTRUCTURE, INC. FOR AN AGGREGATE CONSIDERATION OF $3 MILLION DOLLARS, OF WHICH $600,000 HAD ALREADY BEEN ADVANCED, AND ANOTHER $400,000 WOULD BE ADVANCED IN JULY 2020, WITH THE BALANCE DUE DECEMBER 31, 2020 IN THE AMOUNT OF $2,000,000. THE FULLY EXECUTED OPTION AGREEMENT IS ATTACHED AS EXHIBIT "D" ALONG WITH PROOF OF PAYMENT.

PLAINTIFF WAS ALSO PROVIDED WITH AN APPRAISAL OF THE 65 ACRES OWNED BY DEFENDANT, CONDUCTED BY MID-SOUTH BANK, WHICH APPRAISED THE LAND AND IMPROVEMENTS IN EXCESS OF $10 MILLION DOLLARS. SAID APPRAISAL IS ATTACHED HERETO AS EXHIBIT "E". PLAINTIFF ALSO ADVISED THAT IT WOULD MOVE ITS BANK DEPOSITS TO THE DEFENDANT IN EXCESS OF $200,000.

ON JANUARY 28TH PLAINTIFF PROVIDED A DETAILED EMAIL TO DEFENDANT C/O MR. NAM A VERY DETAILED EXPLANATION OF THE PROPERTY IN QUESTION, AND THE STRATEGIC LOCATION IT WAS IN, AS A GREAT OPPORTUNITY FOR PROSPECTIVE DEVELOPMENT IN CONNECTION WITH THE NEW UNTD CAMPUS AND DART LINE. REASON BEING, THE PROPERTY IS EXPECTED TO BE VALUED MUCH HIGHER SINCE THE LAST APPRAISAL IN 2016.

ON JANUARY 31ST, IN RESPONSE TO THIS APPLICATION, DEFENDANT THRU MR. NAM RESPONDED BY EMAIL DIRECTLY TO MY ATTORNEY, WITH A COPY FORWARDED TO ME, THAT ANY LOAN PROVIDED WOULD BE SECURED BY, IN ADDITION TO THE EXISTING FIRST LIEN ON THE ENTIRE 65 ACRES THAT WAS IN THE LOAN TO BE ASSUMED, A COMPLETE ASSIGNMENT OF THE OPTION AGREEMENT WITH TEXAS CENTRAL RAILROAD & INFRASTRUCTURE, INC. THIS WOULD BE $13 MILLION COLLATERAL TO SECURE A REFINANCING OF $1.6 MILLION AND A LINE OF CREDIT OF $200,000. I ADVISED MR. NAM IN NO UNCERTAIN TERMS, WITH EXPLETIVES DELETED, THAT THIS PROPOSAL WAS REJECTED BY ME AS UNREASONABLE AND WERE ACTUALLY A REJECTION OF MY APPLICATION.

WHEN MR. NAM WAS REQUESTED TO CONFIRM THESE ONEROUS TERMS IN WRITING BY MY ATTORNEY, DEFENDANT CHOSE TO REPLY THAT PLAINTIFF HAD WITHDRAWN ITS LOAN APPLICATION RATHER THAN SPECIFY THE ONEROUS TERMS THAT WERE PROVIDED.

"FURTHER DECLARANT SAYETH NOT."

*/s/ Robert Pitre*
ROBERT J. PITRE

Dated: May 29th, 2020