**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **R.K.C.J., LLC** | § | |
| **PLAINTIFF** | § | |
| | § | |
| | § | Civil Action No. 3:20-CV-00848-n |
| **VS.** | § | Judge David Godbey |
| | § | |
| **TEXAS REPUBLIC BANK, N.A.** | § | |
| **DEFENDANT** | § | |
| | § | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT

/s/Kevin S. Wiley, Sr.

THE WILEY LAW GROUP, PLLC
Kevin S. Wiley, Sr.
State Bar No. 21470700
325 N. St. Paul Street, Suite 2250
Dallas, Texas 75201
Email: kwiley@wileylawgroup.com
Phone: (214) 537-9572
Fax: (972) 449-5717

# TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND FACTS ………………………….……….…… 1

II. ARGUMENT AND AUTHORITIES…………………..………….……………………… 2

      A. DEFENDANTS HAVE NO BASIS FOR MOTION TO DISMISS UNDER THE
      APPLICABLE LEGAL STANDARDS ……………………………………..…….... 2

      B. THERE IS NO BASIS FOR MOTION TO DISMISS FOR FAILURE TO STATE
      A CLAIM UNDER THE EQUAL CREDIT OPPORTUNITY ACT (15 U.S.C. §
      1691) ……………………………………………………………………………… 6

      C. THERE IS NO BASIS FOR MOTION TO DISMISS FOR FAILURE TO STATE
      A CLAIM FOR RELIEF UNDER 42 U.S.C. §1981 …...…………………………..… 16

      D. PLAINTIFF AGREES AND HAS, BY AMENDMENT, DROPPED CLAIMS
      UNDER 42 U.S.C. §1983, 42 U.S.C. §200E; 42 U.S.C. §3602(I); 42 U.S.C. §3614,
      THE TEXAS COMMISSION ON HUMAN RIGHTS ACT (TEX. LAB. CODE
      §§21.001, ET SEQ ……………………………………………………………….... 18

      E. PLAINTIFF HAS DROPPED CLAIMS FOR DECLARATORY RELIEF ….… 18

III. PRAYER FOR RELIEF …..……………………………………………….………..…… 18

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705-706 (5th Cir. 2017) ……..... 7, 10, 13, 14

*Ashcroft b. Iqbal*, 556 U.S. 662 (2009) …………………………………………..……………………. 1, 2, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .... 1, 2, 3, 4, 6

*Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) ………………………………………. 17

*Bjorquez v. Wells Fargo Bank, N.A.*, 2013 WL 6055258 (D.Ore. 2013) ………..………..…….. 9, 10

*Boardley v. Household Fin. Corp. Ill.*, 39 F.Supp. 3d 689 (D.Md. 2014) ………..…………..…. 8, 9, 12

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) …………. 17

*Ceasar v. Wells Fargo Bank*, 2020 WL 525384, (5th Circuit 2 2020)………………………………. 17

*Combs v. Bank of Am., N.A.*, 2015 Dist. Lexis 110130 (D.C. Md. 2015) ………..……. 8, 10, 11, 12

*Gagliardi v. Sullivan*, 513 F.3d 301 (1st Cir.2008) …………………………………………………....... 2

*Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994) ……………………………………… 17

*Glenn v. Wells Fargo Bank, N.A.*, No. DKC 15-3058, 2016 U.S. Dist. LEXIS 85824, 2016 W.L. 3570274 ……………………………………………………………………………………………………… 11

*Gray v. Evercore Restructuring, LLC*, 544 F.3d 320, 324 (1st Cir.2008) ………..……..……….. 3

*Jones v. Caliber Home Loans, Inc.*, 2019 WL 3366104 (M.D.La. 2019) ………..……..……. 14, 15, 16

*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999) …………………………………………..……. 2

*Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) …………………….……… 17

*Martin K. Eby Const. Co., Inc v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) …………………………………………………………………………………………………………… 3, 17

*In re Katrina Beaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), Martin K. ……..……..……… 17

*McDonnell Douglas v. Green*, 411 U.S. 792, 800, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973) .. 3, 12

*Pratt v. City of Houston, Tex.*, 247 F.3d 601, (5th Cir. 2001) …………………………………………. 12

*Pullins v. Hancock Whitney Bank*, 2020 WL 14505060 (M.D.La. 2020) ………..……..…….. 14, 15

*Rodriguez–Ortiz v. Margo Caribe, Inc.*,490 F.3d 92 (1st Cir.2007) ……………………..…………. 3

*Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, (1st Cir.2007). ……………..……..…….. 10

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)……………………………………………..………. 3, 4

*Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, (1st Cir.2008) …………..……… 3

*Walker v. Bank of Am. Corp.* (2019 U.S.Dist. Lexis 133821 (D.Md. 2019) …….... 10, 11, 12, 13, 16

*Wise v. Vilsack*, 496 F. Appx. 283, 285 (4th Cir. 2012) …………………………………………..….. 12

*Vasquez v. Bank of America, N.A.*, 2013 WL 6001924 (N.D.Ca. 20130) ………..……………. 8, 9

iii

**FEDERAL STATUTES AND RULES**

15 U.S.C. § 1691 Et. Seq. ("ECOA") ………………………..…....... 6, 7, 9, 10, 11, 12, 13, 14, 17

28 U.S.C. §1746 …………………………………………………………………………… 1

42 U.S.C. §1981………………………………………………………………………….... 16

42 U.S.C. §1983 ……………………………………………………………………….…... 18

42 U.S.C., §200e ……………………………………………………..……………………...… 18

42 U.S.C. §3602(i) ……………………………………………………………….……..… 18

42 U.S.C. §3614 ……………………………………………………………………………… 18

Title 11, Chapter 13, United States Bankruptcy Code…………………………………………8

Texas Commission on Human Rights Act (Tex. Lab. Code §21.001, et seq ………..………… 18

Rule 12(b)(6) of the Federal Rules of Civil Procedures ……..……………..…….....… 2, 4, 10

Rule 8(a)(2) of the Federal Rules of Civil Procedure …………………………….…..… 2, 12

Rule 11(b)(3) of the Federal Rules of Civil Procedure …………………………………… 13

12 C.F.R. 12 § 202.4(b) ……………………………………………………..…..…… 14

## I.   INTRODUCTION AND BACKGROUND FACTS

1. Plaintiff initiated this complaint by a filing on April 13, 2020. [Doc. #1]. Annexed to this Complaint is the Unsworn Declaration of Plaintiff under penalty of perjury under 28 U.S.C. §1746 in support of the Complaint. (the "Declaration"). Annexed to the Declaration are the exhibits referred to herein and therein unless otherwise described.

2. Defendant filed its Motion to Dismiss [Doc. #7] on May 12, 2019. In this Motion, Defendant argues that the claims brought by Plaintiff are not recoverable, due to, *Inter alia*: (i) the Complaint is based on threadbare and speculative terms supported only by Plaintiff's subjective beliefs. Therefore, according to Defendant, the complaint  does not meet the applicable standards for finding of race discrimination set by the United States Supreme Court in two opinions, *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2002); (ii) several of the statutory elements provide no private right of action for the type of conduct; alternatively, statutory elements are missing for some of the causes of action asserted.

3. Plaintiff filed first its First Amended Complaint to address the issues raised in the Defendant's Motion to Dismiss relating to inapplicability of the statutes cited to support a private cause of action or missing elements. [Doc. #10]. Plaintiff next files this Response to Motion to Dismiss, vigorously disputing Defendant's contention that there is no more than a mere scintilla of evidence and no plausible base for recovery on Plaintiff's complaint based on the facts as alleged therein.

## II.  ARGUMENT AND AUTHORITIES

### A.  Defendants Have No Basis for Motion to Dismiss Under the Applicable Legal Standards

4. The standard under which federal courts review motions to dismiss is governed by Rule 12(b)(6), Fed. R. Civ. Proc. In reviewing a motion to dismiss, the court must determine whether the pleadings contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft, Supra*. (citation omitted). A claim is plausible on its face when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A plaintiff has the task of setting forth factual allegations, either <u>direct or inferential</u>, regarding each material element necessary to recover under an actionable legal theory. *Id.* (citing to *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir.2008) *(*Emphasis added).

5. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Rule 8(a)(2), Fed. R. Civ. Proc. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft, Supra,* at 678 (2009) (citing *Bell, Supra,* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell, Supra,* (internal citations omitted). The Fifth Circuit accepts "'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999).) "Thus, the court should not dismiss [a] claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the

allegations in the complaint."*Martin K. Eby Const. Co., Inc v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).

6. Contrary to the underlying theory in Defendant's Motion to Dismiss, perfection is not required and there is no probability requirement at the pleading stage. Rather, the facts need only raise a reasonable expectation that <u>discovery will reveal evidence to support relief</u>. *Id.* citing to *Bell, Supra, at 1955*. (Emphasis Added). Thus, the complaint must contain enough factual allegations "that raise a right to relief above the speculative level." *Id.* citing to *Gray v. Evercore Restructuring, LLC,* 544 F.3d 320, 324 (1st Cir.2008). To be sure, this obligation requires more than labels, conclusory statements, or simply reciting the elements of a cause of action. *See Bell,* at 1964–65; *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92 at 95–96 (1st Cir. 2007). Dismissal is therefore appropriate if the facts fail to establish a claim to relief that is plausible on its face. *Id*. (citing to *Trans–Spec Truck Serv., Inc. v. Caterpillar, Inc.,* 524 F.3d 315, 320 (1st Cir.2008)).

7. Additionally, the *Bell* Court held that the plausibility requirement was not incongruent with the pleading standard established in *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, at 508 (2002). *Swierkiewicz* held that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The *Swierkiewicz* Court held the prima facie case is a 'flexible evidentiary standard' that **'should not be transposed into a rigid pleading standard for discrimination cases,** *Id.* at 512. *Bell* continued to explain:

"transpos[ing] 'plus factor' summary judgment analysis woodenly into a rigid Rule 12(b)(6) pleading standard ... would be unwise,' Brief for Respondents 39. As the District Court correctly understood, however, '*Swierkiewicz* did not change the law of pleading, but simply re-emphasized ... that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements.' 313 F.Supp.2d, at 181 (citation and footnote omitted). Even though Swierkiewicz's pleadings **detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination,'** the Court of Appeals dismissed his complaint for failing to allege certain additional facts that Swierkiewicz would need at the trial stage to support his claim in the absence of direct evidence of discrimination. *Swierkiewicz,* at 514. We reversed on the ground that the Court of Appeals had impermissibly applied what amounted to a heightened pleading requirement by insisting that Swierkiewicz allege "specific facts" beyond those necessary to state his claim and the grounds showing entitlement to relief. *Id.*, at 508. Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."

*Bell* at 569. (emphasis in original).

8. Plaintiffs believe this case and the facts pled certainly surmounts these nominal hurdles. A borrower of African American descent met with a loan officer of Defendant and discussed with Defendant a refinancing, [not a new issuance of credit], of an existing obligation with Hancock Whitney Bank, N.A. ("Whitney"). The debt principal balance is $1.6 million. The supporting documents supplied to the Bank, annexed as Exhibits to the Declaration, disclose that this debt is secured by a first lien on 64 acres plus improvements with a dated appraisal of over $10 million dollars. The loan is not in default. The loan package that was presented to the Bank involved also disclosure of over $500 million in development of a public university and DART rail line adjacent to the property completed after the appraisal, and a planned development of over

$240 million immediately adjacent, also after the appraisal, along with updated and detailed plans for infrastructure, sewer, water, and transportation improvements in the area, some of which were already in place, and including the completion of a $10 million four-lane roadway improvement that fronts the property.

9. In response to this Proposal, Defendant responded in writing, not verbally, as misstated in the Original Petition as follows, after the receipt of the proposal, including detailed descriptions of the property collateral, the existing indebtedness, current financials, infrastructure development plans, tax returns over three years, appraisals, and financial disclosures in an email dated January 31, 2020 with additional questions about the property and provided the following terms:

"We are still underwriting, but if we were to approve the loan, we would require:

-assignment on the sales contract between the Texas Railroad Commission and RKCJ.
-Skyview Ranch being the operating company, would need to be an additional guarantor.
-2019 year-end Financial Statements for both RKCJ and Sky-View."

10. Upon receipt of this response, the Plaintiff terminated discussions. The very thought to the Plaintiff of assigning a $3 million option agreement with Texas Central, as collateral for repayment of an existing $1.6 million dollar loan, providing an additional 200% of collateral coverage, *in addition to* the first lien on collateral valued at over $10 million (a 900% collateral coverage) based on an appraisal taken before material developments that took place after the appraisal aforementioned, including, but not limited to the $500 million expansion of UTD, Dart Rail, and the planned $240

million development of Centurion next door, smacked of pure racism. Mr. Pitre then instructed the undersigned counsel to file this suit for relief.

11. Plaintiff's contention is thus that, but for the race of its principals, it would never have been provided with such onerous terms for consideration. Plaintiff further believes that discovery will demonstrate the disparate treatment in proffered terms to Plaintiff for like investment to Anglo borrowers, exactly the standard elucidated by *Bell, Supra*. If in fact Defendant can produce evidence that such terms have historically been provided to an Anglo borrower of similar means at this juncture of due diligence, then and in that event, Defendant would prevail. However, to assert that dismissal is required merely because this fact pattern is the basis of the lawsuit, and same is thus made on pure speculation as argued by Defendant, would read the fleshing out thru discovery provisos of *Bell* completely out of that decision. Plaintiff  is simply required to prove that during trial, after completion of discovery of Defendant's similar proposals to Anglo borrowers, Defendant's decisions were, more likely than not, motivated by racial animus—not hold Plaintiff to the impossible burden of proving the negative thesis that there was no racial bias at the Motion to Dismiss stage. Under Defendant's reading of *Bell*, Plaintiff never gets its day in court. Reliance on *Bell* for that premise is simply wrong. *Bell* squarely holds that Plaintiff can move forward to discovery to confirm its allegations of racial bias in the provision of these discouraging credit terms.

**B.  There is No Basis for Motion to Dismiss for Failure to State a Claim Under the Equal Credit Opportunity Act (15 U.S.C. § 1691)**

12. Plaintiff and Defendant agree that this suit under Equal Credit Opportunity Act ("ECOA") must be based on discrimination in "any applicant with respect to any

aspect of a credit transaction…on the basis of race, color, religion, national origin, sex, or marital status or age.". 15 U.S.C. § 1691(a). [Doc. 7, p.4, par. 7].

13. Under the plain language of the statue, "any aspect of a credit transaction" would include the preliminary terms of a loan proposal prior to the conclusion of due diligence. 15 U.S.C.§§ 1691(a). Therefore, it follows that if the preliminary terms are provided on a racially discriminatory basis, as alleged by Plaintiff, that the stage of the transaction at the proposal level would not foreclose this action, and even Defendant does not assert that premise.

14. Rather, Plaintiff concurs with Defendant's authority cited in the Motion to Dismiss on the basic elements of an ECOA cause of action. In the Fifth Circuit, to state a claim for which relief may be granted under the ECOA, Plaintiffs must show that they were plausibly discriminated against in violation of statute. "More specifically, the complaint must plausibly allege that (1) each plaintiff was an "applicant"; (2) the defendant was a "creditor"; and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class." . *Alexander v. AmeriPro Funding, Inc.,* 848 F.3d 698, 705-706 (5th Cir. 2017) (See 15 U.S.C. §§ 1691(a), 1691a(b), 1691a(e), 1691e(a)." (Emphasis added). That litany of requirements is a virtual summary of Plaintiff's complaint, and Plaintiff does not use mere labels to describe these separate discrete facts.

15. In response, Defendant has asserted nothing but conclusory arguments that the Plaintiff's pleading "does not come close to satisfying" these requirements. [Doc. #7, par. 11 p. 5.]. In support of this conclusory argument, Defendant relies on a string of cases that are clearly distinguishable on their facts.

16. For example, Defendant cites *Combs v. Bank of Am., N.A.,* 2015 Dist. Lexis 110130 (D.C. Md. 2015) to support the argument that Plaintiff offered no qualifications to support a loan modification. In *Coombs*, a divorcee' sought a loan modification after the divorced husband defaulted on a mortgage on the property that had been awarded to him during his occupation. Shortly after taking occupancy following husband's default, Plaintiff further defaulted on payments. Plaintiff then filed a petition for relief to avert foreclosure under Title 11, Chapter 13, United States Bankruptcy Code. During the bankruptcy, she attempted to modify the above-mentioned loan modification to cure her defaults. The modifications were then denied for failure to provide requested financial documents.

17. The Plaintiff then filed suit under ECOA. The Court had little trouble in granting the motion to dismiss on this record, where the bankrupt Plaintiff utterly failed to demonstrate she qualified for extension of credit. Similar decisions cited by Defendant show fact patterns where the Plaintiff failed to provide any direct evidence of their loan qualifications. (See *Boardley v. Household Fin. Corp. Ill.,* 39 F.Supp. 3d 689 (D.Md. 2014); *Bjorquez v. Wells Fargo Bank, N.A.,* 2013 WL 6055258 (D.Ore. 2013); *Vasquez v. Bank of America, N.A.*, 2013 WL 6001924 (N.D.Ca. 20130.)

18. The holding in *Bjorquez*, *Supra,* is proudly quoted by Defendant [Doc. #7, par. 12] in support of the argument that Plaintiff has failed to allege sufficient facts supporting its qualifications for the loan request. By citing to *Bjorquez*, Defendant is showing how little attention they paid to Plaintiff's petition.  The reliance on *Bjorquez* is misplaced. *Bjorquez's* holding was: "[B]eyond merely concluding that they were 'refus[ed] the loan for which [they were] qualified,' plaintiffs do  not … allege any facts

demonstrating that they  were, in fact, eligible for credit and nonetheless denied.*"* *Bjorquez, Supra at 13.*

19. To use this *Bjorquez* holding as precedent shows Defendant has ignored the express provisions of the original complaint, Par. 4-7, with supporting Exhibits A-E that demonstrated that Plaintiff had a net worth in excess of $15 million; the property that was to secure refinancing was in excess of $10 million in appraised value before $500 million in adjacent property improvements (UNT; Dart Rail); the Plaintiff had a partially funded option agreement to sell 27 acres to the Texas Central Railroad for $3,000,000 payable $600,000 in January 2020 (paid); $400,000 in July 2020, and the balance of $2.0 million in December 2020, and last Plaintiff's tax returns that showed it had earned over $2.5 million dollars in real estate sales. In short, Plaintiff is hardly the bankrupt debtor  in *Coombs, Supra,* or *Boardley*, *Supra,* who failed to timely turn in requested documents for a loan modification on a home and offered no support for credit qualification; nor the debtors without qualifying financial statements or "any support" in *Bjorquez and Vasquez, Supra.*

20. In response to these facts, Defendant urges this Court to believe that Plaintiff's statements of qualifications in its pleadings are "mere conclusory assertions" of qualifications for credit, criticized in *Vasquez, Supra*. The allegations in the Complaint are not mere conclusory assertions, but "specific facts" that supported Plaintiff's qualifications for the refinancing, all of which are to be taken as true at this stage of the proceedings. If the problem is the original pleading did not state specifically that the facts being alleged were in support of substantial credit qualification, then that technical issue is solved in the First Amended Complaint. (Doc. #10).

21. What Defendant desires is this Court to ignore what is the rule on credit qualification in ECOA cases. The rule adopted by the Fifth Circuit in *AmeriPro, Supra,* and has become the consensus in most Circuits, is that there are three elements for an ECOA discrimination claim—(i) membership in a protected class; (ii)whether there was an application for credit for which the plaintiff was qualified;  and (iii) whether there was a rejection  or other disparate treatment despite qualifications. *Walker v. Bank of Am. Corp.* (2019 U.S. Dist. Lexis 133821 (D.Md. 2019). That case distinguishes *Combs, Supra*, cited to by Defendant, and was decided in that same District.  Plaintiff Walker was distinguished from the bankrupt Plaintiff in *Combs* on the facts recited in the pleadings, to wit, that Plaintiff Walker in this ECOA case was (i) a full time employee of United Airlines; (ii) had several other sources of income (including rental property); (iii) received a monthly pension, (iv) owned an annuity valued at $340,000; and (iv) had a credit score of between 780 and 730.

22. The Court first noted that it was required to review the sufficiency of allegations set forth in the complaint, and the documents attached or incorporated into the complaint, on the second element issue of credit qualification. *Walker, Supra,* at 6. As earlier noted, such factual recitals at the stage of a motion to dismiss are given great deference—"Under Rule 12(b)(6), the Court must accept the allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff*." Ruiz v. Bally Total Fitness Holding Corp.,* 469 F.3d. 1 (1ˢᵗ Cir. 2007*).* The only fact missing in this case at bar from *Walker*, is the credit score, which defect is remedied in the First Amended Complaint. The Court also noted that it had the right to take judicial notice, if need be, outside the pleadings.

23. The Court then accepted the pleading facts of qualification, and distinguished *Walker* from *Combs* in that the Plaintiff in *Walker,* like the Plaintiff here, was not a divorcee', bankrupt, with no credit rating, had modest assets (in Walker, $300,000 annuity, here $15 million in real estate) and a job, holding as follows:

> To be sure, Ms. Walker might well have strengthened her pleading by particularizing Bank of America's requirements for extending credit to an applicant in her circumstances. (see *Glenn v. Wells Fargo Bank, N.A.,* No. DKC 15-3058, 2016 U.S. Dist. LEXIS 85824, 2016 W.L. 3570274. At 5 (D.Md. July 1. 2016) (noting, in a decision dismissing an ECOA claim for discriminatory lending, that the plaintiff "offer[ed] no allegations regarding the terms of his credit approval, the requirements necessary for approval, or critically Plaintiff's actual qualifications when he submitted each application.')). I question, though, whether it would be practicable to *require* an ECOA plaintiff to detail the formula a lender will apply in determining whether to issue a loan to a particular applicant, given the likelihood that these details will be unknown to the applicant.  Defendants, in any event, have not cited any authority stating that this information is in fact, required.  I am satisfied that Ms. Walker's allegations here are sufficient to satisfy the second element [ credit qualification] …."

24. To add insult to the injury of the allegation that Plaintiff failed to state minimal requirements for credit qualification, Defendant then asserts that Plaintiff has failed to make allegations regarding racial animus; and/or that Plaintiff's allegations do not suggest similarly qualified white applicants were, in fact, granted less "onerous terms". [Dkt. #7, par. 9]. These arguments are as equally disconnected from the facts and law of this case as the weak argument that Plaintiff made no allegations to support that it was a qualified borrower under the ECOA.

25. First, a Plaintiff may prove an ECOA claim by relying on one of three different approaches used in the employment discrimination cases: (i) direct evidence of

discrimination; (ii) disparate impact analysis; and (iii) disparate treatment analysis. *Combs, Supra,* at 3. When, as in the case here, the Plaintiff seeks to prove disparate treatment of discrimination without direct evidence of discrimination, but rather circumstantial evidence, the court analyzes the claim under the familiar *McDonnell Douglas, Supra,* burden-shifting framework. *Wise v. Vilsack,* 496 F. Appx. 283, 285 (4th Cir. 2012) *(per curium).* Under this framework, the plaintiff must first establish a prima facie case of race discrimination. *Boardley, Supra, at 3.* "Once this prima facie case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the challenged employment action." *Pratt v. City of Houston, Tex.,* 247 F.3d 601, (5th Cir. 2001*),* at 606. (citing *McDonnell Douglas, Supra*, at, 802).

26. At the "pleading stage", "the plaintiff is under no obligation to prove anything." *Walker, Supra* at 8. Rather, the obligation is to satisfy a claim that satisfies the demands of Rule 8(a)(2) of the Federal Rules of Civil Procedure requiring a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief". *Id.* To the *Walker* court, that test was met when a claim was stated that was "plausible on its face". *Walker, Supra* at 8. And, to state a claim that was plausible, the above three tests of ECOA had to be simply pled by specific facts, not proved. *Id.* Plaintiff easily passes this test as argued above in meeting the three elements of an ECOA claim, similar to the facts in *Walker, Supra.*

27. Here, Defendant criticizes Plaintiff's allegations because they "do not reflect any discriminatory animus." [Doc. #7, par. 9] The plain statement of the complaint is that, but for Plaintiff's race, it would never have been quoted the terms it was quoted. It

is for this Court to find, at the close of the evidence, whether there was or was not racial animus. Defendant cannot cite to any authority that the source of the alleged disparate treatment, or whether the treatment itself was disparate, must be proved at pleading stage. Specific facts are alleged that but for the race of the owners of Plaintiff, they would not have been quoted the written terms requiring an assignment of the option agreement with Texas Central, valued at $3 million dollars, to secure a first lien on an existing indebtedness secured by property in excess of $10 million, with net assets of over $200,000 they would move to deposit in Defendant's bank.

28. The same argument applies that Plaintiff has not alleged similarly qualified white applicants were, in fact, granted less "onerous terms". The disparate treatment has been adequately and specifically pleaded. [Doc. #10, par. 12] As shown in *Walker, Supra*, it is not a requirement that Plaintiff plead and prove at this stage the alleged disparate treatment, or what the lending criteria of Defendant are, or were disparately applied. Rather, Defendant will have its day in court to shift the burden back to Plaintiff if it can demonstrate racial neutrality in its lending practices here.[1]

29. Defendant can cite no authority that Plaintiff was required to wait to actual loan rejection under a statute that applies to all stages of the lending process. On the contrary, Plaintiffs do not need to have actually applied for a loan to engage the protection of the ECOA. In *AmeriPro, Supra,* Plaintiffs reason that "even if they did not actually apply, they failed to apply only because they were 'discouraged' from applying."

---

[1] In that regard, the District Court noted in *Walker, Supra*, that Rule 11(b)(3) of the Federal Rules of Civil Procedure "allows pleadings based on evidence reasonably anticipated after further investigation or discovery. *Id*. Whether the decision of Defendant was actually disparate treatment based on race will be subject to this discovery test. However, Plaintiff is entitled to its belief that the terms were disparate treatment based on the circumstantial evidence pled,

*AmeriPro, Supra,* at 708708 (Citing 12 C.F.R. § 202.4(b)). The *AmeriPro* court cited a regulation pertinent to the ECOA, known as "Regulation B," providing '[a] creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application.'" *Id.* (citing 12 C.F.R. § 202.4(b)).

30. In *AmeriPro*, *Supra*, Petitioner's claims failed because, "after filing a Third Amended Complaint, they do not plausibly allege that they 'applie[d]' for a loan or otherwise requested credit." *Supra* at 707. Similarly, Plaintiffs did not identify any specific AmeriPro staff they could have spoken to. *Id.* In *AmeriPro*, Plaintiffs only claim they "contacted and made inquiry ... as to financing a home, and that they contacted Defendant AmeriPro Funding during various months of the calendar years 2011 to and including 2014." *Id.* (internal citations omitted). "These are the only allegations, broad and unspecific as they are, that the AmeriPro Inquirers make that are not conclusions and formulaic recitations of the elements of the claim." *Id.*

31. Here, Plaintiffs have provided direct evidence of specific communication, on specific days, between a commercial loan officer of Defendant and Plaintiff. Additionally, Plaintiff **did** in fact apply for a loan with Defendant, with substantial documentation as verified in the Declaration.

32. Defendant cites to *Pullins v. Hancock Whitney Bank, 2020 WL 14505060 (M.D.La. 2020),* and *Jones v. Caliber Home Loans, Inc., 2019 WL 3366104 (M.D.La. 2019)* to support the argument that Plaintiff only offered "vague and conclusory

---

and if evidentiary support is not obtained after further investigation or discovery, Plaintiff recognizes its duty under the rules not to persist with the contention.

allegations which are legally insufficient to establish a claim for disparate treatment." Examination of these cases demonstrate their lack of application to the facts here.

33. *Pullins*, *Supra*, decided an ECOA case involving a refusal of a bank to honor a settlement check drawn on an attorney's account until after 24 hour waiting period. The fact that the attorney was the plaintiff's sister was not a critical fact. Rather, the issue for the court is whether one of the three tests of ECOA—a credit transaction, was simply met. The Court held that a check cashing is not a credit transaction. That case is not authority for any proposition regarding vague and conclusory allegations legally insufficient to establish a claim for disparate treatment, since that would have only been dicta, and not the basis of a holding.

34. *Jones, Supra*, is more problematic to Defendant's claims. In *Jones*, a homeowner applied, and was granted, a refinancing. He contends that the bank switched the documents after his execution and applied his signature page to a document that had inferior terms than those that he had negotiated. He alleged that he made the first two elements of an ECOA action: (i) that he was a member of a protected class; (ii) that he applied and was qualified for a loan. For the third element, that the loan was given on grossly unfavorable terms because he qualified for a prime rate and was provided a sub-prime rate, he provided only his credit score in support. Last, as to the fourth element, applicable to reverse redlining cases, he did not plead that he was either intentionally targeted, or that the bank currently makes loans on more favorable terms to others.

35. The premise of the holding was the distinction that the Defendant could not have targeted the Plaintiff, since he was the one that solicited the loan from the Defendant, holding:

Further, Plaintiff failed to adequately plead the fourth element as Plaintiff did not allege that Defendant took any positive actions towards inducing him into taking out a loan he could not afford but argues, instead, that **he reached out to Defendant** in hopes of attaining refinancing. Because Plaintiff's allegations demonstrate that he sought out the loan, and Defendant did not actively induce him to do so, Plaintiff has failed to plead the required elements and cannot **[*15]** state a claim for reverse redlining. Any claim for reverse redlining is dismissed with prejudice.

*Jones* at 14-15.

36. *Jones* is therefore distinguished from the facts here, since the present case is not a "reverse-redlining" type at all, but a case involving alleged disparate terms in a credit transaction. Further, Plaintiff here has supplied much more than a mere "credit score" in support of its financial means that are substantiated in his pleadings and exhibits, and/or that the Court could take judicial notice, as it did in *Walker*, *Supra.* Plaintiff's claims for disparate treatment are unlike *Jones, Supra*, and not merely based on speculation without any supporting foundation. Unlike the plaintiff in *Iqbal, Supra*, Plaintiff is not "merely armed with nothing more than conclusions seeking to support them with discovery." *Id.* at 678-79.

### C. There is No Basis for Motion to Dismiss for Failure to State a Claim for Relief Under 42 U.S.C. §1981.

37. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). To establish a § 1981 claim for contractual discrimination, Plaintiffs must allege that:

(1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute—here, making a contract. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994). The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims. *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,* 869 F.3d 381, 386 (5th Cir. 2017).

38. In *Ceasar v. Wells Fargo Bank 1:18-CV-00479-MAC, 2020 WL 525384, at \*2 (E.D. Tex. Jan. 31, 2020),* the District Court has explained, "the court must accept the facts alleged in the complaint as true, [Plaintiff] has alleged a plausible violation of § 1981." (citations excluded) The court explained the facts that led to Plaintiff's success in his initial complaint:

> Wells Fargo denied him a personal loan several times. [Dkt. #1, par. 2.] In response to Wells Fargo's motion to dismiss, Ceasar argues that Wells Fargo denied him loans based upon his age (66 years old) and race because he applied for loans on more than one occasion, was qualified for the loans, but denied credit despite his qualifications. Dkt. #21, par. 6. Therefore, Ceasar alleges that he was "treated differently" than others in Wells Fargo's lending practices.

*Id*. The Eastern District of Texas ruled that, based upon these allegations, "which are construed as true, the court finds that Ceasar has sufficiently alleged an ECOA claim." *Id.* (*see In re Katrina Beaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. DART, Supra.*)

39. Plaintiff's §1981 argument is identical to the arguments raised under ECOA issue. For the same reasons as asserted in the ECOA analysis, Defendants claims that the cause of action under this statute, identical to the statutory requirements and pleading regime of ECOA, should be dismissed should fail.

**D. Plaintiff Agrees and has by Amendment Dropped Claims under 42 U.S.C. §1983, 42 U.S.C., §200e; 42 U.S.C. §3602(i); 42 U.S.C. §3614, the Texas Commission on Human Rights Act (Tex. Lab. Code §§21.001, et seq.**

40. Plaintiff agrees, after careful review of authorities cited and its own further research, with Defendant that the above causes of action with respect to the causes of action here should be dismissed, primarily because they are redundant to Plaintiff's case. Rather than suffer dismissal, Plaintiff has amended its complaint to drop the quoted statutes as a basis for relief.

**E. Plaintiff Does Not State a Claim for Declaratory Relief.**

Likewise, Plaintiff has removed the request for Declaratory Relief from its First Amended Petition.

**III. PRAYER FOR RELIEF**

WHEREFORE, ALL PREMISES, Movant prays that the Court order deny the Motion to Dismiss, and for such other and further relief to which it may be entitled.

Respectfully Submitted

/s/ Kevin S. Wiley, Sr.

THE WILEY LAW GROUP, PLLC
Kevin S. Wiley, Sr.
State Bar No. 21470700
325 N. St. Paul Street, Suite 2250
Dallas, Texas 75201
Email: kwiley@wileylawgroup.com
Office: (214) 954-9905
Mobile: (214) 537-9572
Fax: (972) 449-5717

**CERTIFICATE OF CONFERENCE**

I certify that I have attempted to discuss this motion to dismiss by agreement, and the attorney for the Defendant has not agreed to the relief requested.

/**s**/Kevin S. Wiley, Sr.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing has been served on the counsel to the defendant to the address below:

Tom ("Trey") Hill Crawford, III
Texas State Bar No. 24059623
tcrawford@cwl.law
Jason T. Weber
Texas State Bar No. 24075251
jweber@cwl.law

CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500
Facsimile: (214) 817-4509
Counsel for Defendants TXRB Holdings, Inc.
and Texas Republic Bank, N.A.

/s/Kevin S. Wiley, Sr.