# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| R.K.C.J., LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-00848-N |
| | § | Judge David C. Godbey |
| Texas Republic Bank, N.A., | § | |
| | § | |
| *Defendant*. | § | |

---

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) AND BRIEF IN SUPPORT

---

**Tom ("Trey") H. Crawford, III**
Texas State Bar No. 24059623
tcrawford@cwl.law
**Jason T. Weber**
Texas State Bar No. 24075251
jweber@cwl.law

**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500
Facsimile: (214) 602-6551

*Counsel for Defendant*
*Texas Republic Bank, N.A.*

**TABLE OF CONTENTS**

I. SUMMARY OF MOTION AND PRELIMINARY STATEMENT ...................................................... 1

II. STANDARD OF REVIEW .............................................................................................. 3

III. ARGUMENTS AND AUTHORITIES ............................................................................... 4

    A.   Plaintiff Fails to State a Claim Under the ECOA ............................................ 4

        1. Theory 1 – Anti-Discrimination ...................................................................... 5

        2. Theory 2 – Unlawful Handling ....................................................................... 9

        3. Theory 3 – Unlawful Discouragement ........................................................ 11

    B.   Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981 ................................ 14

IV. CONCLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. AmeriPro Funding, Inc.*,
    848 F.3d 698 (5th Cir. 2017) ........................................................................... 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 3, 4, 7, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................. 3, 4, 15

*Boardley v. Household Fin. Corp. III*,
    39 F. Supp. 3d 689 (D. Md. 2014) ........................................................... 7, 14, 15

*Bojorquez v. Wells Fargo Bank, N.A.*,
    No. 6:12–cv–2077–AA, 2013 WL 6055258 (D. Or. Nov.7, 2013) .............................. 8

*Coleman v. Maryland Court of Appeals*,
    626 F.3d 187 (4th Cir. 2010) ........................................................................... 5

*Combs v. Bank of Am., N.A.*,
    No. GJH- 14-3372, 2015 WL 5008754 (D. Md. Aug. 20, 2015) .................................. 7

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) .......................................................................... 3, 4

*Egbukichi v. Wells Fargo Bank, NA*,
    184 F. Supp. 3d 971 (D. Or. 2016) ...................................................................... 6

*Four A's Inv. Co., L.L.C. v. Bank of Am. Corp.*,
    No. 09-00351-CV-W-FJG, 2010 WL 2720713 (W.D. Mo. July 6, 2010) ...................... 6

*Germain v. M&T Bank Corp.*,
    111 F. Supp. 3d 506 (S.D.N.Y. 2015) .................................................................. 1

*Grant v. CPC Logistics, Inc.*,
    No. 3:12-CV-200-L, 2012 WL 601128 (N.D. Tex. Feb. 23, 2012) .............................. 1

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    634 F.3d 787 (5th Cir. 2011) ........................................................................... 4

*Jones v. Caliber Home Loans, Inc.*,
    No. CV-18-1023-SDD-EWD, 2019 WL 3366104 (M.D. La. July 25, 2019) ............. 6, 8, 14

*Martinez v. Reno*,
    No. 3:97-CV-0813-P, 1997 WL 786250 (N.D. Tex. Dec. 15, 1997) ........................... 12

*McDonnell Douglas Corp. v. Green*,

    411 U.S. 792 (1973) ................................................................................................ 5

*Montano–Valdez v. Wells Fargo Bank, N.A.*,

    No. H–13–3078, 2014 WL 69886 (S.D. Tex. Jan. 8, 2014) ...................................... 7

*Priester v. Lowndes Cty.*,

    354 F.3d 414 (5th Cir. 2004) .................................................................................. 1

*Pullins v. Bank*,

    No. CV 19-00006, 2020 WL 1450560 (M.D. La. Mar. 25, 2020) ........................... 8

*Reece v. Countrywide Home Loans Inc.*,

    No. 7:06-CV-181-0, 2008 WL 4559809 (N.D. Tex. Oct. 10, 2008) ......................... 5

*Vasquez v. Bank of America, N.A.*,

    No. 13–cv–02902–JST, 2013 WL 6001924 (N.D. Cal. Nov. 9, 2013) ..................... 8

*Xtria LLC v. Tracking Sys., Inc.*,

    No. 3:07-CV-0160-D, 2007 WL 1791252 (N.D. Tex. June 21, 2007) ...................... 1

**Statutes**

12 U.S.C. § 5581 ......................................................................................................... 9

15 U.S.C § 1691c-2 .................................................................................................. 4, 9

15 U.S.C. § 1691(a) .................................................................................................. 1, 5

22 U.S.C. § 2201 ......................................................................................................... 1

42 U.S.C. § 1981 ......................................................................................................... 1

42 U.S.C. § 1983 ......................................................................................................... 1

42 U.S.C. § 3602 ......................................................................................................... 1

42 U.S.C. § 3614 ......................................................................................................... 1

42 U.S.C. § 2000e ....................................................................................................... 1

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 14

# I.
## SUMMARY OF MOTION AND PRELIMINARY STATEMENT

1.        The *First Amended Complaint* ("*Amended Complaint*") (Dkt. 10) has abandoned all claims brought under (i) 28 U.S.C. § 2201;[1] (ii) 42 U.S.C. § 1983;[2] (iii) 42 U.S.C. §§ 2000e, *et seq.*;[3] (iv) 42 U.S.C. § 3602; (v);[4] (vi) 42 U.S.C. § 3614;[5] and (vi) the "Texas Human Rights Law."[6]

2.        Plaintiff R.K.C.J., LLC ("Plaintiff"), now, only asserts lending discrimination claims under: (i) the EQUAL CREDIT OPPORTUNITY ACT ("ECOA"), 15 U.S.C. §§ 1691, *et seq.*; and (ii) the CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1981.[7]

3.        Each remaining claim is premised on Plaintiff's conclusory assertion that Defendant Texas Republic Bank, N.A. ("TRB") engaged in racial discrimination against Plaintiff's majority member in the course of the preliminary diligence phase of a potential lending transaction. While the *Original Complaint* (and original sworn declaration) alleged that discriminatory terms

---

[1] Which does not permit a declaration of claims already asserted. *See, e.g.*, *See Xtria LLC v. Tracking Sys., Inc.*, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (dismissing pursuant to Rule 12(b)(6) motion declaratory judgment action that sought resolution of substantive claim that was already basis of lawsuit).

[2] Which only applies to state actors and those acting under color of law (none of which was—or could—be alleged). *See, e.g.*, *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004) ("For a private citizen [or entity] . . . to be held liable under section 1983, the plaintiff must allege that the citizen [or entity] conspired with or acted in concert with state actors.").

[3] Which does not confer a private right of action. *See* 42 U.S.C. § 2000e; *see also Grant v. CPC Logistics, Inc.*, No. 3:12-CV-200-L, 2012 WL 601128, at *1 (N.D. Tex. Feb. 23, 2012) ("Plaintiff's claim lacks an arguable basis in law because violations of a criminal statute do not give rise to a private right of action, and there is not private right of action for civil perjury under Texas law.").

[4] Which does not create a private right of action for a business applicant in a commercial transaction. *See, e.g.*, *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 524 (S.D.N.Y. 2015) ("[Section] 3605 does not apply to the transaction alleged in the Amended Complaint because Plaintiffs' purpose in applying for the loan was commercial, rather than residential, and the discrimination that they allege is directed at them as commercial applicants, rather than at the prospective residents of the property.").

[5] Which confers standing to the U.S. Attorney General—*not* private litigants. *See* 42 U.S.C. § 3614 ("Enforcement by Attorney General").

[6] When no such statute even exists by this name. Even had Plaintiff intended to reference the "Texas Commission on Human Rights Act ("TCHRA")—*i.e.*, the closest statute in name—the TCHRA, which is codified in the TEXAS LABOR CODE, is limited to employment disputes. *See* TEX. LAB. CODE §§ 21.001, *et seq.*

[7] *See* Pl.'s 1st Am. Compl., ¶¶ 17–25 (Dkt. 10).

were <u>conveyed verbally</u>, Plaintiff has not abandoned this theory. The *Amended Complaint* (and Plaintiff's new sworn declaration) now alleges that discriminatory terms were <u>conveyed in writing</u>. Regardless of which version is to be believed, it remains <u>undisputed that Plaintiff unilaterally withdrew its application during the preliminary underwriting phase before loan terms could even be offered</u>. This distinction—which is fatal to Plaintiff's claims—cannot be ignored.

4.       Notwithstanding this roadblock, the *Amended Complaint* attempts to resuscitate Plaintiff's lawsuit through a newfound theory that Plaintiff prematurely withdrew its application during the underwriting phase because it was unlawfully "discouraged" from pursuing the application. In support of this theory (which requires evidence that discouragement was motivated by a discriminatory basis), Plaintiff espouses racial stereotyping—<u>Plaintiff expressly suggests that the race/national origin of TRB's loan officer (*i.e.*, Japanese) creates an inference of discriminatory animus</u>: "**It is commonly known that some people of Japanese descent believe that there are a superior race, based on the history of their nation, and the American takeover of such after World War II.**"[8] Such racist stereotyping has no place with this Court, does nothing to advance Plaintiff's claims, and has a negative impact on legitimate discrimination claims.

5.       Ultimately, the *Amended Complaint* suffers from the same defects as the *Original Complaint* and dismissal under Rule 12(b)(6) remains appropriate for the same reasons. Specifically, the alleged discrimination is stated in the most conclusory, speculative terms and supported only by Plaintiff's subjective, unsubstantiated, and threadbare allegations which—even assuming they were true—do not state a claim for which relief can be granted. Plaintiff admittedly withdrew its application early in the underwriting phase before loan terms could be discussed and

---

[8] *See id.* at ¶ 15.

finalized.[9] These allegations do not meet the *Twombly/Iqbal* pleading standard and are insufficient to state a claim upon which relief may be granted. Consequently, dismissal of all of Plaintiff's claims is appropriate because each claim is entirely bereft of any factual or legal grounds that would suggest Plaintiff is plausibly entitled to relief. Simply put, Plaintiff's *Amended Complaint* fails to articulate facts which, if taken as true, demonstrate that actions were taken against it as a result of race. Therefore, Plaintiff's claims are ripe for dismissal pursuant to FED. R. CIV. P. 12(b)(6).

## II.
### STANDARD OF REVIEW

6.     FED. R. CIV. P. 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. *Twombly*, 550 U.S. at 555 & n.3. Thus, while a court must accept all factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

7.     Moreover, to survive a motion to dismiss for failure to state a claim, the facts pled

---

[9] *See* Pl.'s Orig. Compl., ¶ 10 (Dkt. 1).

must allow the court to infer that the plaintiff's right to relief is plausible. *Id*. at 678. Under a Rule 12(b)(6) analysis, "'the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (*quoting Iqbal*, 556 U.S. at 678). A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. *Id.* To allege a plausible right to relief, the facts pled must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Twombly*, 556 U.S. at 566–69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (internal citation omitted).

### III.
### ARGUMENTS AND AUTHORITIES

### A.  Plaintiff Fails to State a Claim Under the ECOA

8.    Plaintiff's core claim against TRB is a lending discrimination claim under the ECOA.[10] Plaintiff alleges three theories of discrimination under the ECOA: (i) unlawful discrimination under 15 U.S.C. § 1691(a)(1);[11] (ii) unlawful handling of a minority-owned business under 15 U.S.C. § 1691c-2(d)(1);[12] and (iii) unlawful discouragement under 12 C.F.R. § 202.4(b).[13] All three theories are unavailing on the face of Plaintiff's pleading.

---

[10] *See* Pl.'s 1st Am. Compl., ¶¶ 17–25 (Dkt. 10).
[11] *See id.* at ¶¶ 17–19 (Plaintiff's "First Count").
[12] *See id.* at ¶¶ 20–22 (Plaintiff's "Second Count").
[13] *See id.* at ¶¶ 23–25 (Plaintiff's "Third Count").

### *Theory 1 – Anti-Discrimination*

9.     The ECOA prohibits "any creditor" from discriminating against "any applicant with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a).

10.     To succeed on an ECOA claim, a plaintiff must plead and provide direct evidence of unlawful discrimination or, if direct evidence is lacking, follow the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Reece v. Countrywide Home Loans Inc.*, No. 7:06-CV-181-0, 2008 WL 4559809, at *2 (N.D. Tex. Oct. 10, 2008) ("Race discrimination claims brought pursuant to the ECOA employ the same burden-shifting analysis conducted in Title VII cases.").

11.     "To survive a motion to dismiss, the complaint must 'state[] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679), aff'd sub nom., *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012). "More specifically, the complaint must plausibly allege that (1) plaintiff was an 'applicant;' (2) the defendant was a 'creditor;' and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class. *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705–06 (5th Cir. 2017) (quoting 15 U.S.C. §§ 1691(a), 1691a(b), 1691a(e), 1691e(a)).

12.     With respect to the third element, "[a] claimant can establish a racial discrimination complaint under the . . . ECOA by showing disparate treatment, which is deliberate discrimination that results in treating some people less favorably than others because of a protected trait." *Jones v. Caliber Home Loans, Inc.*, No. CV-18-1023-SDD-EWD, 2019 WL 3366104, at *5

(M.D. La. July 25, 2019) (internal citations and quotations omitted). Facts that might plausibly suggest that the denial of credit was because of or on the basis of an applicant's protected status may include: (i) that the applicant was qualified to receive credit and was denied credit, or offered less favorable terms, despite being qualified; (ii) facts demonstrating discriminatory animus or treatment by the defendant; or (iii) that persons not within the protected class were granted extensions of credit by the defendant. *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 980 (D. Or. 2016). Plaintiff cannot establish disparate treatment for at least three reasons.

13.     *First*, Plaintiff's allegations, while conclusory, do not reflect any discriminatory animus or treatment by TRB. Instead, the *Amended Complaint* reflects only a professional introduction, a preliminary exchange of information, and run-of-the-mill communications one would expect to see in the early due diligence stage of a potential lending transaction.[14] This dialogue prematurely ended when <u>Plaintiff unilaterally withdrew its application during the underwriting phase</u>. This alone is fatal to Plaintiff's claim of discrimination under the ECOA (and 42 U.S.C. § 1981):

> Plaintiffs do not explain in their suggestions in opposition how they can state a claim for violation of the ECOA when their loan was never rejected. Instead, Four A's withdrew the loan application before Bank of America finished its consideration of the application.

*Four A's Inv. Co., L.L.C. v. Bank of Am. Corp.*, No. 09-00351-CV-W-FJG, 2010 WL 2720713, at *5 (W.D. Mo. July 6, 2010).

14.     *Second*, Plaintiff does not adequately allege it was qualified for less "onerous" credit terms than those purportedly offered by TRB, nor does Plaintiff explain how it was discriminatory for a bank to request an option agreement (*i.e.*, liquidated collateral) instead of real

---

[14] *See id.* at ¶¶ 4–10.

property (which has many more barriers to collection) as collateral.[15] Throughout the *Amended Complaint*, Plaintiff offers allegations concerning its assets, income, and ownership structure.[16] But Plaintiff offers no factual allegations regarding the requirements necessary for credit approval on the less "onerous" terms Plaintiff surmises were available to white applicants. Rather, Plaintiff admits that "the loan was still in underwriting and more information was needed," and concedes that the foundation for Plaintiff's claims is the owner's subjective experience with other banks in the past and the illogical leap to Plaintiff's conclusion that there must have been discriminatory animus at play here. Mere speculation is not sufficient under *Iqbal/Twombly*. *See Iqbal,* 556 U.S. 678–79. This principle is true when, as here, Plaintiff's speculative conclusions lack any objective foundation.

15.    A number of federal courts have found similar pleadings insufficient to state a plausible claim of discrimination under the ECOA. *See, e.g., Combs v. Bank of Am., N.A.*, No. GJH-14-3372, 2015 WL 5008754, at *3 (D. Md. Aug. 20, 2015) ("Although she alleges that she is a member of a protected class, she fails to adequately allege that she met the qualifications for loan modification and was denied despite her qualifications. In fact, Plaintiff does not indicate what qualifications were at issue."); *Montano–Valdez v. Wells Fargo Bank, N.A.*, No. H–13–3078, 2014 WL 69886, at *2 (S.D. Tex. Jan. 8, 2014) ("[ECOA Plaintiff] does not allege any specific facts showing that she qualified for the loan modification she sought, or that others who were similarly situated but outside her protected class received the loan she was denied. Courts addressing motions to dismiss similar allegations have found pleadings too conclusory and skeletal to proceed.") (collecting cases); *Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 711 (D.

---

[15] *See id.* at ¶¶ 10 & 12.
[16] *See id.* at ¶¶ 4-8; *see id.* at Ex. A-1.

Md. 2014) ("[B]ecause . . . Plaintiffs do not allege their qualifications, Plaintiffs' pleadings fall short with regard to their ECOA lending discrimination claim."); *Bojorquez v. Wells Fargo Bank, N.A.,* No. 6:12–cv–2077–AA, 2013 WL 6055258, at *6 (D. Or. Nov.7, 2013) ("[B]eyond merely concluding that they were 'refus[ed] the loan for which [they were] qualified,' plaintiffs do not . . . allege any facts demonstrating that they were, in fact, eligible for credit and nonetheless denied.") (dismissing ECOA claim); *Vasquez v. Bank of America, N.A.*, No. 13–cv–02902–JST, 2013 WL 6001924, at *13 (N.D. Cal. Nov. 9, 2013) ("[ECOA Plaintiff] must also allege specific facts, not mere conclusory assertions, demonstrating that [plaintiff] was "qualified for credit.").

16.     *Third*, Plaintiff's allegations do not suggest that similarly qualified white applicants were, in fact, granted less "onerous terms" sought by Plaintiff. In fact, Plaintiff does not even plead the specific material terms of any lending transaction—much less terms Plaintiff was seeking (*e.g.*, payment terms, interest rate, duration, type of loan, collateral, etc.). The only allegation suggesting discriminatory treatment is Plaintiff's threadbare supposition that a hypothetical white, but similarly qualified applicant, *might* receive a better deal than the one Plaintiff withdrew from before terms could even be offered by TRB.[17] Yet, "[o]ne conclusory allegation in support of a claim under the ECOA is not sufficient to withstand a challenge under Rule 12(b)(6)." *Pullins v. Hancock Whitney Bank*, No. CV 19-00006, 2020 WL 1450560, at *4 (M.D. La. Mar. 25, 2020); *see also Jones,* 2019 WL 3366104, at *5 ("Plaintiff offered only vague and conclusory allegations which are legally insufficient to establish a claim for disparate treatment.").

---

[17] *See id.* at ¶ 12.

### *Theory 2 – Unlawful Handling*

17.     Plaintiff's cites 15 U.S.C. § 1691c-2(d)(1) for the suggestion that it was unlawful for TRB's loan officer to know that Plaintiff was a minority-owned business.[18] Section 1691-c-2(d)(1) states:

> <u>Where feasible</u>, no loan underwriter or other officer or employee of a financial institution, or any affiliate of a financial institution, involved in making any determination concerning an application for credit shall have access to any information provided by the applicant pursuant to a request under subsection (b) in connection with such application.

15 U.S.C § 1691c-2 (emphasis added).

18.     This provision was enacted as part of the DODD-FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT (DODD-FRANK"). *See* H.R. 4173, 111th Cong. (2010) (enacted). Importantly, DODD-FRANK granted rule-making authority under the ECOA to the Consumer Financial Protection Board ("CFPB"). *See generally* 12 U.S.C. § 5581. This is also reflected in the same statute that Plaintiff cites above:

> **(1) In general**
>
> The Bureau *shall prescribe* such rules and issue such guidance as may be necessary to carry out, enforce, and compile data pursuant to this section.
>
> **(2) Exceptions**
>
> The Bureau, by rule or order, *may adopt exceptions to any requirement of this section* and may, conditionally or unconditionally, exempt any financial institution or class of financial institutions from the requirements of this section, as the Bureau deems necessary or appropriate to carry out the purposes of this section.
>
> **(3) Guidance**
>
> The Bureau *shall issue* guidance designed to facilitate compliance with the requirements of this section, including assisting financial institutions in working with applicants to determine whether the applicants are women-owned, minority-owned, or small businesses for purposes of this section.

---

[18] See id. at ¶ 21.

15 U.S.C. § 1691c-2(g)(1)–(3) (emphasis added) (codified in Section 1071 of DODD-FRANK).

19.    The CFPB—*i.e.*, the bureau charged with enforcing and issuing guidance on the ECOA—has taken the position that 15 U.S.C. § 1691c-2 (also known as Section 1071 of DODD-FRANK) is not applicable to financial institutions until after the CFPB issues necessary implementing regulations:

> Section 1071 amends the Equal Credit Opportunity Act to require that financial institutions collect and report information concerning credit applications made by women- or minority-owned businesses and by small businesses. As explained below, financial institutions' obligations under section 1071 do not go into effect until the Bureau issues necessary implementing regulations.[19]

20.    For reasons that are beyond the issues before the Court, the CFPB has still not issued any guidance or rules related to 15 U.S.C. § 1691c-2 (*i.e.*, Section 1071 of DODD-FRANK). In May 2019, a lawsuit was filed against the CFPB, which argued that the CFPB has violated the ADMINISTRATIVE PROCEDURES ACT and DODD-FRANK by failing to implement Section 1071.[20] On February 26, 2020, a Court-approved settlement was entered in the CFPB Lawsuit, which again acknowledge that (i) the CFPB is required to issue regulations in order to implement 15 U.S.C. § 1691c-2; and (ii) CFPB has not yet done so:

> WHEREAS, Section 1071 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 15 U.S.C. § 1691c-2 ("Section 1071"), was enacted to facilitate enforcement of fair lending laws and enable communities, governmental entities, and creditors to identify business and community development needs and opportunities of women-owned, minority-owned, and small businesses;
>
> WHEREAS, the Bureau is required to issue regulations ("Section 1071

---

[19] Letter from Leonard J. Kennedy, General Counsel, Consumer Financial Protection Bureau, to Chief Executive Officers of Financial Institutions under Section 1071 of the Dodd-Frank Act (Apr. 11, 2011) (accessible at https://files.consumerfinance.gov/f/2011/04/GC-letter-re-1071.pdf).

[20] TRB respectfully requests that this Court take judicial notice of Cause No. 4:19-cv-02572-JSW; *California Reinvestment Coalition, National Association for Latino Community Asset Builders, Deborah Lynn Field, and Reshonda Young v. Kathleen L. Kraninger and Consumer Financial Protection Bureau*; In the united States District Court for the Northern District of California Oakland Division (the "CFPB Lawsuit"). *See* CFPB Lawsuit, Stipulated Settlement Agreement and Order, p. 2 (Dkt. 53).

Implementing Regulations") to implement Section 1071;

WHERAS, the Bureau has not issued the Section 1071 Implementing Regulations . . . .[21]

21.     In addition, pursuant to the Stipulated Settlement Agreement and Order, the CFPB agreed to issue a final rule for the Section 1071 Implementing Regulations ("Section 1071 Final Rule") within a finite period after public commenting, reporting, and internal review is completed—none of which will occur until the later part of 2020 (at the earliest).[22]

22.     In short, 15 U.S.C. § 1691c-2 does not go into effect until the CFPB issues a Section 1071 Final Rule. Because the CFPB has not yet issued a Section 1071 Final Rule, TRB does not yet have any statutory obligations under 15 U.S.C. § 1691c-2. Therefore, Plaintiff has no basis in law for arguing that TRB has violated a statute that is not yet in effect.[23]

23.     Furthermore, even if 15 U.S.C. § 1691c-2 were in effect, Plaintiff has failed to explain (i) the safeguards/procedures that TRB allegedly violated under this statute; or (ii) what TRB allegedly should have done differently to adhere to appropriate safeguards/procedures—nor can it because no such regulatory guidance yet exists. There is absolutely nothing *per se* discriminatory about a bank loan officer meeting in person with the owner of a minority-owned business. Any suggestions to the contrary are non-sensical.

### *Theory 3 – Unlawful Discouragement*

24.     The ECOA also prohibits a creditor from engaging in unlawful discouragement: "A creditor shall not make any oral or written statement, in advertising or otherwise, to applicants

---

[21] See CFPB Lawsuit, Stipulated Settlement Agreement and Order, p. 2 (Dkt. 53).

[22] *See id.* at 3. On May 26, 2020, the CFPB filed a Status Report (Dkt. 54) in the CFPB Lawsuit, advising the Court that implementation of the Section 1071 regulations may be delayed due to COVID-19.

[23] Even if 15 U.S.C. § 1691c-2 were in effect, Plaintiff has failed to explain (i) the safeguards/procedures that TRB allegedly violated under this statute; or (ii) what TRB allegedly should have done differently to adhere to appropriate safeguards/procedures—nor can it because no such regulatory guidance yet exists.

or prospective applicants <u>that would discourage on a prohibited basis a reasonable person from</u> making or pursuing an application." 12 C.F.R. § 202.4(b) (emphasis added).

25.     Plaintiff claims that two conditions "discouraged" it from pursuing its loan application:

> Mr. Nam informed Plaintiff that, while the loan was still in underwriting and more information was needed, any loan provided would need to additionally be secured by **[1]** <u>a complete assignment of the option agreement</u> with the Texas Railroad Commission (Exhibit "D") and **[2]** <u>an additional guaranty</u> for Skyview Ranch.[24]

26.     Plaintiff claims that based on its <u>assumption</u> that this would amount to $13 million in collateral, it was "discouraged" from pursuing the application further and was reasonably justified in advising "Mr. Nam in no uncertain terms, with expletives deleted, that this proposal was rejected to me as unreasonable and were actually a rejection of my application."[25] This theory of unlawful discouragement fails for two reasons.

27.     _First_, 12 C.F.R. § 202.4(b) focuses on whether a reasonable person would be discouraged from pursuing the application further. Plaintiff ignores this distinction. Specifically, Plaintiff fails to explain why a reasonable person would prematurely terminate its application ("with expletives") without first asking for further clarification on the information or collateral the creditor was seeking or clarification on whether that would even be in addition to a lien on real property. _E.g._, _Martinez v. Reno_, No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997) ("the Court need not accept as true conclusory allegations, legal characterizations, unreasonable inferences or unwarranted deductions of fact").

28.     _Second_, 12 C.F.R. § 202.4(b) requires a "prohibited basis" (_e.g._, a discriminatory

---

[24] _See_ Pl.'s 1st Am. Compl., ¶ 11 (Dkt. 10) (emphasis added).
[25] _See_ Pl.'s 1st Am. Compl., Declaration of Robert J. Pitre (Dkt. 10).

animus). Here, the only discriminatory animus offered by Plaintiff is the loan officer's race—which Plaintiff suggests is, by itself, somehow indicative of racism:[26]

> 15. It is safe to assume the area surrounding Texas Republic Bank, located in an upscale shopping area, Stonebriar Center, does not match the demographic of Mr. Pitre. Similarly, it would be safe to assume that most of the customers who secure loans at Texas Republic Bank do not own land in "South" Dallas. When making small talk with Daniel Nam, the commercial loan officer, and quasi underwriter, at Texas Republic Bank, Plaintiff inquired as to the origin of his name. Mr. Nam explained it is of Japanese descent. It is commonly known that some people of Japanese descent believe that they are a superior race, based on the history of their nation and the American takeover of such after World War II. Mr. Nam's onerous offer of credit to Mr. Pitre, without completing underwriting, and without all the information requested, is outwardly discriminatory to him, as an applicant. Defendant, through Mr. Nam's offer, obviously wanted Mr. Pitre to take his business elsewhere. There can be no other conclusion that Mr. Pitre was discriminated against because of his race, and the stigma that surrounds his neighborhood, property, and the African Americans in Dallas.

29.     Pedaling racist stereotypes has no place in this forum and does nothing to advance Plaintiff's pleading burden. Again, Plaintiff's allegations do not reflect or evidence any discriminatory animus or treatment by TRB. Instead, the *Amended Complaint* reflects only a professional introduction, a preliminary exchange of information, and run-of-the-mill communications one would expect to see in the early due diligence stage of a potential lending transaction..[27] "Plaintiff had withdrawn its loan application" before the parties got any further.[28] Threadbare recitals of discrimination fail to demonstrate that actions were taken against Plaintiff as a result of race.

30.     Therefore, because Plaintiff's conclusory and skeletal ECOA claims contain no factual allegations showing Plaintiff's qualification for less "onerous" credit terms, or a denial (or discouragement) of such favorable terms on the basis of race, it cannot withstand scrutiny under

---

[26] *See id.* at ¶ 15.
[27] *See id.* at ¶¶ 6–11.
[28] *See* Pl.'s 1st Am. Compl., Declaration of Robert J. Pitre (Dkt. 10).

Rule 12(b)(6), and dismissal is appropriate. Moreover, because Plaintiff has already been given one opportunity to amend its complaint (to no avail), any additional amendments would be futile. As such, Plaintiff's ECOA claims should be dismissed with prejudice.

## B.  Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981

31.     In addition to its ECOA claims, Plaintiff has also asserted a claim under 42 U.S.C. § 1981.[29]

32.     Section 1981 creates a private cause of action against private actors who interfere with a claimant's right to contract on the basis of race. 42 U.S.C. § 1981. To state a *prima facie* case of discrimination under 42 U.S.C. § 1981 in the context of goods and services, such as a line of credit, a plaintiff must allege: (i) it is a member of a protected class; (ii) it sought to enter into a contractual relationship with the defendant; (iii) it met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (iv) it was denied the opportunity to contract for goods or services that were otherwise afforded to white customers. *See Boardley*, 39 F. Supp. 3d at 710.

33.     Given these pleading requirements, Plaintiff's Section 1981 claim cannot withstand Rule 12(b)(6) scrutiny for the same reasons as its ECOA claim. Namely, Plaintiff has not plead facts showing its qualification for the less "onerous" loan terms sought. Nor has Plaintiff alleged facts showing the alleged denial of these favorable terms was motivated by Plaintiff's race or membership in a protected class. Indeed, Plaintiff admittedly withdrew its application in the early due diligence phase prior to the point where final loan terms could even be discussed. Moreover, Plaintiff's *Amended Complaint* is devoid of allegations that any credit terms

---

[29] *See* Pl.'s 1st Am. Compl., ¶¶ 17–25 (Dkt. 10).

purportedly offered to Plaintiff were different than those actually offered to similarly qualified white applicants.[30] There is only Plaintiff's unsubstantiated conjecture that, hypothetically, if similarly qualified white applicants were to apply, they might be offered more favorable terms than Plaintiff may have been offered had it not withdrawn its application before underwriting was complete.

34.     But these highly speculative allegations based solely on a hypothetical circumstance and Plaintiff's conjecture as to Defendants' conduct, should such a situation arise, do not meet the *Twombly/Iqbal* pleading standard, and are insufficient to state a Section 1981 claim. *Twombly*, 550 U.S. at 550; *Iqbal,* 556 U.S. at 679; *Boardley*, 39 F. Supp. 3d at 710 ("While Plaintiffs have alleged that they are African–American, that they sought a line of credit from Defendants, and that they were denied the loan they initially sought . . . they have not stated a claim under the Civil Rights Act. Fatally, Plaintiffs fail to claim that they were qualified for the line of credit they sought. . . . Additionally, Plaintiffs make only unsupported vague claims with regard to the treatment of the protected class in comparison to others outside the class, such as that Defendants' pricing policy "had a significant and pervasive adverse impact on black homeowners,"… and that "black[s] and Hispanics paid disparately more discretionary charges (both in frequency and amount)" and higher interest rates "than similarly situated whites[.]" . . . Consequently, Plaintiffs offer only conclusory allegations that others outside their protected class received loans on more favorable terms. These threadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements, do not suffice.") (internal quotations and citations omitted)). Accordingly, Plaintiff fails to state a plausible claim for relief pursuant to

---

[30] *See id.* at ¶¶ 4–10, 27.

Section 1981.

## IV.
### CONCLUSION

35.     For these reasons, TFB respectfully requests that the Court grant its Rule 12(b)(6)

Motion to Dismiss, enter an Order dismissing Plaintiff's causes of action with prejudice, grant

TFB its attorneys' fees and costs incurred in defending Plaintiff's causes of action, and grant TFB

all other relief, in both law and equity, to which it may be justly entitled.

Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

By: */s/ Tom H. Crawford, III*
     **Tom ("Trey") H. Crawford, III**
     Texas State Bar No. 24059623
     tcrawford@cwl.law
     **Jason T. Weber**
     Texas State Bar No. 24075251
     jweber@cwl.law

     1700 Pacific Avenue, Suite 2390
     Dallas, Texas 75201
     Telephone: (214) 817-4500
     Facsimile: (214) 602-6551

     *Counsel for Defendant*
     *Texas Republic Bank, N.A.*

## CERTIFICATE OF SERVICE

Pursuant to FED. R. CIV. P. 5(b)(2)(e) and 5(b)(3), I hereby certify that a true and correct copy of the foregoing document was filed electronically on this 15th day of June 2020. Parties may access this filing through the Court's system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

     */s/ Tom H. Crawford, III*
     Tom Hill Crawford, III