# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

|  |  |  |
|---|---|---|
| **R.K.C.J., LLC**<br>**PLAINTIFF** | § § § | |
| | § | Civil Action No. 3:20-CV-00848-n |
| **VS.** | § § | Judge David Godbey |
| | § | |
| | § | |
| **TEXAS REPUBLIC BANK, N.A.**<br>**DEFENDANT** | § § § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND MOTION TO DISMISS
## AND BRIEF IN SUPPORT

/s/Kevin S. Wiley, Sr.

THE WILEY LAW GROUP, PLLC
Kevin S. Wiley, Sr.
State Bar No. 21470700
325 N. St. Paul Street, Suite 2250
Dallas, Texas 75201
Email: kwiley@wileylawgroup.com
Phone: (214) 537-9572
Fax: (972) 449-5717

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………..ii

TABLE OF AUTHORITIES…………………………………………………………………iii

FEDERAL CASES……………………………………………………………..iii-iv

FEDERAL STATUTES AND RULES……………………………………………………iv

I. INTRODUCTION AND BACKGROUND FACTS................................................................ 1

II. ARGUMENT AND AUTHORITIES ................................................................................... 2

A. Defendants Have No Basis for Motion to Dismiss ............................................................ 2

Under Rule 12(b)(6).............................................................................................................. 2

b. There Is No Basis for Motion to Dismiss for Failure to State a Claim Under the Equal Credit Opportunity Act (15 U.S.C. § 1691) ............................................................................... 5

i. Plaintiff's Claim of Unlawful Discrimination is Sufficient to Survive Dismissal Under 15 U.S.C. § 1691(A)(1).............................................................................................................. 9

ii. Plaintiff's Claim of Unlawful Handling of Plaintiff's Application is Sufficient to Survive Dismissal Under 15 U.S.C. § 1691c-2(D)(1)................................................................. 12

iii. Plaintiff's Claim of Discouragement is Sufficient to Survive Dismissal Under 12 C.F.R. § 202.4(B). ............................................................................................................... 13

C. There Is No Basis for Motion to Dismiss for Failure to State a Claim for Relief Under 42 U.S.C. §1981........................................................................................................................ 15

III. PRAYER FOR RELIEF ................................................................................................. 17

CERTIFICATE OF CONFERENCE…………………………………………………17

CERTIFICATE OF SERVICE…………………………………………………… 17

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alexander v. AmeriPro Funding, Inc., 848 F.3d 698, 705-706 (5th Cir. 2017)* ….….*2,8,9,13*

*Ashcroft b. Iqbal, 556 U.S. 662 (2009)* …………………………………………………*1,2,9*

*Bell Atl. Corp. v. Twomby, 550 U.S. 544 (2007)*…………………………. ………....*1,2,5,9*

*Bellows v. Amoco Oil Cp., 118 F. 3d 268 (5th Cir. 1997)*……………………………*10,15*

*Boardley v. Household Fin. Corp. Ill., 39 F.Supp. 3d 689 (D.Md. 2014)* …………*6,10,16*

*Body by Cook, Inc. v. State Farm Mut. Auto Ins., 869 F.3d 381 (5th Cir. 2017)*……*15*

*Ceasar v. Wells Fargo Bank, 2020 WL 525384,  (E.D. Tex. 2020)*…………………*15*

*Combs v. Bank of Am., N.A., 2015 Dist. Lexis 110130 (D.C. Md. 2015)* …………..*3,10*

*Copeland v. Comm'r, 290 F.3d 326 (5th Cir. 2002)*……………………………………*12*

*Four A's Inv. Co. v. Bank of America Corp., 2010 WL 2729713 (M.D. Mo. 2010)*………*9*

*Green v. State Bar of Texas, 27 F.3d 1083 (5th Cir. 1994)*……………………………*15*

*In re Katrina Beaches Litig., 495 F.3d 191 (5th Cir. 2007)*……………………………*16*

*Jones v. Caliber Home Loans, Inc., 2019 WL 3366104 (M.D.La. 2019)* ……………..*7,8*

*Jones v. Robinson Prop. Corp. L.P., 427 F.3d 987 (5th Cir. 2001)*……………………*15*

*Lara v. Cinemark USA, Inc., 207 F.3d 783 (5th Cir. 2003)*…………………………....*12*

*Martin K. Eby Const. Co. v. Dallas Area Rapid Transit,  367 F.3d 464 (5th Cir. 2004)*……*4*

*Martinez v. Reno, 1997 W.L. 786250 (N.D.Tex. 1997)*…………………………………*13*

*McDonnell Douglas v. Green, 411 U.S. 792  (1973)*……………………………*3,6,16*

*Pratt v. City of Houston, Texas,  247 F.3d 601 (5th Cir. 2001)*…………………….…*3,6*

*Pullins v. Hancock Whitney Bank, 2020 WL 14505060 (M.D.La. 2020)* …………….…*7*

*United States v. Raymer, 876 F.3d 383 (5th Cir. 1989)* …………………………….…*12*

iii

*Walker v. Bank of Am. Corp. (2019 U.S.Dist. Lexis 133821 (D.Md. 2019)* ………….6,7,8

*Wise v. Vilsack, 496 F. Appx. 283, 285 (4th Cir. 2012)* ………………………………..6

*Vasquez v. Bank of America, N.A., 2013 WL 6001924 (N.D.Ca. 2013)* ……………10

**FEDERAL STATUTES AND RULES**

15 U.S.C. § 1691 et seq. ……………………………………………..Passim

28 U.S.C. § 1746…………………………………………………………1

42 U.S.C. § 1981 et seq. …………………………………………………..15

12 C.F.R. § 202 et seq…………………………………………………..7,13

Rule 8(a)(2) of the Federal Rules of Civil Procedure …………………………..2,6,7

Rule 11(b)(3) of the Federal Rules of Civil Procedure …………………………..7

Rule 12(b)(6) of the Federal Rules of Civil Procedure…………………………2

## I. INTRODUCTION AND BACKGROUND FACTS

1. Plaintiff initiated this complaint by a filing on April 13, 2020. [Doc.#1].  Annexed to this complaint is the Unsworn Declaration of Plaintiff, under penalty of perjury under 28 U.S.C. § 1746, in support of the complaint (the "Declaration"). Annexed to the Declaration are the exhibits referred to herein unless otherwise described.

2. Defendant filed its Motion to Dismiss Plaintiff's Petition [Doc. #7] on May 12, 2020. In this Motion, Defendant argued that the claims brought by Plaintiff are not recoverable, due to, *Inter alia*: (i) the Complaint is based on conclusory terms supported only by Plaintiff's subjective beliefs. Therefore, according to Defendant, the complaint does not meet the applicable standards for finding of race discrimination set by the United States Supreme Court in two opinions: *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twomby*, 550 U.S. 544 (2007); and (ii) certain statutes cited to in the original complaint [Doc. #1] did not support individual causes of action.

3. Plaintiff filed first its First Amended Complaint supported by another Declaration and identical exhibits [Doc.# 10] on May 30, 2020 to address the issues raised in the Defendant's first Motion to Dismiss [Doc. #7]. Plaintiff then also filed its Response to the Motion to Dismiss [Doc. #7] on June 1, 2020 [Doc. # 11].

4. Defendant then filed its second Motion to Dismiss based on that amended complaint on June 15, 2020.  [Doc. #14].

5. Plaintiff next files on July 4, 2020, this Response to the Defendant's second Motion to Dismiss First Amended Petition [Doc. #14], again, vigorously disputing Defendant's contentions and asserting that there is more than a mere scintilla of evidence and a plausible basis for recovery on Plaintiff's complaint based on the facts as alleged therein.[Doc. # 15].

## II. ARGUMENT AND AUTHORITIES

### A. DEFENDANTS HAVE NO BASIS FOR MOTION TO DISMISS UNDER RULE 12(B)(6).

6. The standard under which federal courts review motions to dismiss is governed by Rule 12(b)(6), Fed. R. Civ. Proc To survive a motion to dismiss:

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief...

*Alexander v. AmeriPro Funding, Inc.,* 848 F.3d 698, 706 (5th Cir. 2017) (citing *Ashcroft v. Iqbal, Supra,* 678–79, (2009) (citations, quotations, and alterations omitted)).

7. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Rule 8(a)(2), Fed. R. Civ. Proc. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft, Supra,* at 678 (2009) (citing *Bell, Supra,* at 555). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell, Supra.*, (internal citations omitted).

> To state a claim for relief under the ECOA, the plaintiffs must plausibly show that they were discriminated against in violation of the statute. More specifically, the complaint must plausibly allege that (1) each plaintiff was an "applicant"; (2) the defendant was a "creditor"; and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class.

*Alexander v. AmeriPro Funding, Inc., Supra,* at 705.

8. Once this prima facie case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the challenged employment action. *Pratt v. City of Houston, Tex.*, 247 F.3d 601, 606 (5th Cir. 2001) (citing *McDonnell Douglas,* 411 U.S. 792, 802-04 (1973)

9. Plaintiffs believe this case and the facts pled certainly surmounts the nominal hurdles outlined above. A well-qualified borrower of African American descent met with a loan officer of Defendant and discussed with Defendant a refinancing, [not a new issuance of credit], of an existing obligation with Hancock Whitney Bank, N.A. ("Whitney"). The debt principal balance is $1.6 million. The supporting documents supplied to Defendant, annexed as Exhibits to the Declaration, disclose that this debt is secured by a first lien on 64 acres plus improvements. The most recent dated appraisal values this land at over $10 million dollars. The current loan is not in default. The loan package that was presented to Defendant also involved disclosure of over $500 million in development of a public university and DART rail line adjacent to the property and completed after the most recent appraisal; a planned development of over $240 million immediately adjacent, also planned after the appraisal; along with updated and detailed plans for infrastructure, sewer, water, and transportation improvements in the area, some of which were already in place; and including the completion of a $10 million four-lane roadway improvement that fronts the property.

10. After receipt of this Proposal, including detailed descriptions of the property used as collateral, the existing indebtedness of Plaintiff, current financial statements, current infrastructure development plans, tax returns over three years, appraisals of the property, and financial disclosures, Defendant responded in writing, not verbally as misstated in the Original

Petition. In an email dated January 31, 2020, along with additional questions about the property and financial questions, Defendant provided the following terms:

> "We are still underwriting, but if we were to approve the loan, we would require:
>
> - assignment on the sales contract between the Texas Railroad Commission and RKCJ.
>
> - Skyview Ranch being the operating company, would need to be an additional guarantor.
>
> -2019 year-end Financial Statements for both RKCJ and Sky-View."

11. Upon receipt of this response, Plaintiff withdrew its application and terminated discussions with Defendant. Through this proffering of terms from Defendant, Plaintiff is being asked to assign a $3 million option agreement with Texas Central Railroad Commission as additional collateral for repayment of the existing $1.6 million dollar loan, providing an additional 200% of collateral coverage. These terms are so offensive because the loan is currently, and after refinancing will be, secured *already* by the first lien on the property as collateral, valued at over $10 million based on current appraisal and without the increase in value of the improvements in the surrounding area (a 900% collateral coverage).

12. These improvements to the surrounding land were carefully explained to Defendant through its representative. The idea that Defendant was requiring almost 1000% collateral to secure a refinancing was baffling to Plaintiff and smacked of pure racism. Plaintiff's extensive experience with banks and business transactions creates extensive experience with the lending and payment processes. Never had Plaintiff, Mr. Pitre, a Black businessowner from South Dallas, been so overtly insulted by terms like Defendant's, especially before the loan had completed underwriting. The only logical motive for Defendant's request was to discourage

Plaintiff from pursuing the loan in the first place. Mr. Pitre then instructed the undersigned counsel to file this suit for relief.

13. Plaintiff's contention is thus that, but for the race of its principals, it would never would have been provided with such onerous terms for consideration. Plaintiff further believes that discovery will demonstrate the disparate treatment in proffered terms to Plaintiff for like investment to Anglo borrowers, exactly the standard elucidated by *Bell, Supra*. If in fact Defendant can produce evidence that such terms have historically been provided to an Anglo borrower of similar means at this juncture of due diligence, then and in that event, Defendant would prevail. However, to assert that dismissal is required merely because this fact pattern is the basis of the lawsuit, and same is thus made on pure speculation as argued by Defendant, would leave out the discovery provisos of the *Bell* decision.

14. Plaintiff is simply required to prove that during trial, after completion of discovery of Defendant's similar proposals to Anglo borrowers, the vast majority of the population in Defendant's locale, Defendant's decisions were, more likely than not, motivated by racial animus—not hold Plaintiff to the impossible burden of proving the negative thesis, that there was no racial bias, at the Motion to Dismiss stage. Under Defendant's reading of *Bell*, Plaintiff , after establishing its plausible case, never gets its day in court. Reliance on *Bell* for that premise is simply wrong. *Bell* squarely holds that Plaintiff can move forward to discovery upon its allegations of racial bias in the provision of these discouraging credit terms.

**B. There Is No Basis for Motion to Dismiss for Failure to State a Claim Under the Equal Credit Opportunity Act (15 U.S.C. § 1691)**

15. As Defendant accurately points out, there are three different claims Plaintiff makes under 15 U.S.C. § 1691, the Equal Credit Opportunity Act.

16. Plaintiff and Defendant agree that this suit under Equal Credit Opportunity Act ("ECOA") must be based on discrimination of "any applicant with respect to any aspect of a credit transaction…on the basis of race, color, religion, national origin, sex, or marital status or age." 15 U.S.C. § 1691(a). [Defendant's Motion to Dismiss, p.4, par. 7].

17. Under the plain language of the statue, "any aspect of a credit transaction" would include the preliminary phase of a loan proposal prior to the conclusion of due diligence. 15 U.S.C.§§ 1691(a). Therefore, it follows that if the preliminary terms are provided on a racially discriminatory basis, as alleged by Plaintiff, that the stage of the transaction at the proposal level would not foreclose this action, and even Defendant does not assert that premise.

18. First, a Plaintiff may prove an ECOA claim by relying on one of three different approaches used in the employment discrimination cases: (i) direct evidence of discrimination; (ii) disparate impact analysis; and (iii) disparate treatment analysis. *Combs v. Bank of America, N.A.* 2016 Lexis 85824 (D.C.Md. 2015) at 3. When, as in the case here, the Plaintiff seeks to prove disparate treatment of discrimination without direct evidence of discrimination, but rather circumstantial evidence, the court analyzes the claim under the familiar *McDonnell Douglas, Supra,* burden-shifting framework. *Wise v. Vilsack, 496 F. Appx. 283, 285 (4th Cir. 2012) (per curium).* Under this framework, the plaintiff must first establish a prima facie case of race discrimination. *Boardley v. Household Fin. Corp, ILL.,* 39 F. Supp.689 at 3 (D.C.Md. 2015). "Once this prima facie case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the challenged employment action." *Pratt, Supra,* at 606. (citing *McDonnell Douglas, Supra*, at, 802).

19. At the "pleading stage", "the plaintiff is under no obligation to prove anything." *Walker v. Bank of Am. Corp.,* 2019 Lexis 133821 (D.Md.2019). Rather, the obligation is to satisfy a claim that satisfies the demands of Rule 8(a)(2) Fed. R.Civ. Proc. requiring a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief". *Id.* To the *Walker* court, that test was met when a claim was stated that was "plausible on its face". *Walker, Supra* at 8. And, to state a claim that was plausible, the above three tests of ECOA had to be simply pled by specific facts, not proved. *Id*. Plaintiff easily passes this test as argued above in meeting the three elements of an ECOA claim, similar to the facts in *Walker, Supra*.

20. Defendant argues that Plaintiff has not alleged similarly qualified white applicants were, in fact, granted less "onerous terms". [Motion to Dismiss, Doc.#14, par. 16, p.8]. The disparate treatment has been adequately and specifically pleaded. Defendant simply confuses "pleading" with "proof". As shown in *Walker, Supra*, it is not a requirement that Plaintiff plead <u>and</u> prove at this stage the alleged disparate treatment, or what the lending criteria of Defendant are, or were disparately applied. Rather, Defendant will have its day in court to shift the burden back to Plaintiff if it can demonstrate racial neutrality in its lending practices here.[1]

21. Defendant can cite no authority that Plaintiff was required to wait to actual loan rejection under a statute that applies to all stages of the lending process. On the contrary, Plaintiffs do not need to have actually applied for a loan to engage the protection of the ECOA. In *AmeriPro, Supra,* Plaintiffs reason that "even if they did not actually apply, they failed to

---

[1] In that regard, the District Court noted in *Walker, Supra*, that Rule 11(b)(3) of the Federal Rules of Civil Procedure "allows pleadings based on evidence reasonably anticipated after further investigation or discovery. *Id*. Whether the decision of Defendant was actually disparate treatment based on race will be subject to this discovery test. However, Plaintiff is entitled to its belief that the terms were disparate treatment based on the circumstantial evidence pled, and if evidentiary support is not obtained after further investigation or discovery, Plaintiff recognizes its duty under the rules not to persist with the contention.

apply only because they were 'discouraged' from applying." *AmeriPro, Supra,* at 708 (citing 12 C.F.R. § 202.4(b)).

22. Defendant cites to *Pullins v. Hancock Whitney Bank, 2020 WL 14505060 (M.D.La. 2020),* and *Jones v. Caliber Home Loans, Inc., 2019 WL 3366104 (M.D.La. 2019)* to support the argument that Plaintiff only offered "vague and conclusory allegations which are legally insufficient to establish a claim for disparate treatment." Examination of these cases demonstrate their lack of application to the facts here.

23. *Jones, Supra*, is more problematic to Defendant's claims. In *Jones*, a homeowner applied, and was granted, a refinancing. He contends that the bank switched the documents after his execution and applied his signature page to a document that had inferior terms than those that he had negotiated. He alleged that the first two elements of an ECOA action: (i) that he was a member of a protected class; (ii) that he applied and was qualified for a loan. For the third element, that the loan was given on grossly unfavorable terms because he qualified for a prime rate and was provided a sub-prime rate, he provided only his credit score in support. Last, as to the fourth element, he did not plead that he was either intentionally targeted, or that the bank currently makes loans on more favorable terms to others.

24. The premise of the holding was the distinction that the Defendant could not have targeted the Plaintiff, since he was the one that solicited the loan from the Defendant, holding:

> Further, Plaintiff failed to adequately plead the fourth element as Plaintiff did not allege that Defendant took any positive actions towards inducing him into taking out a loan he could not afford but argues, instead, that **he reached out to Defendant** in hopes of attaining refinancing. Because Plaintiff's allegations demonstrate that he sought out the loan, and Defendant did not actively induce him to do so, Plaintiff has failed to plead the required elements and cannot state a claim for reverse redlining. Any claim for reverse redlining is dismissed with prejudice.

*Jones, Supra,* at 14-15.

25. *Jones* is therefore distinguished from the facts here, since the present case is not a "reverse-redlining" type at all, but a case involving alleged disparate terms in a credit transaction. Further, Plaintiff here has supplied much more than a mere "credit score" in support of its financial means that are substantiated in his pleadings and exhibits, and/or that the Court could take judicial notice, as it did in *Walker*, *Supra.* Plaintiff's claims for disparate treatment are unlike *Jones, Supra*, and not merely based on speculation without any supporting foundation. Unlike the plaintiff in *Iqbal, Supra*, Plaintiff is not "merely armed with nothing more than conclusions seeking to support them with discovery." *Id.* at 678-79.

**i. Plaintiff's Claim of Unlawful Discrimination is Sufficient to Survive Dismissal Under 15 U.S.C. § 1691(A)(1).**

26. To survive a motion to dismiss under the ECOA:

> the plaintiffs must plausibly show that they were discriminated against in violation of the statute. More specifically, the complaint must plausibly allege that (1) each plaintiff was an "applicant"; (2) the defendant was a "creditor"; and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class.

*AmeriPro Funding, Inc., Supra* at 848 F.3d 698, 705). Plaintiff has established that its majority members are members of a protected class, African American, and that the Defendant's bank was a creditor as defined by statute. The only area of contention was the fact that Defendant's proffering of the onerous loan terms was based on race, and not some other reason Defendant has yet to offer. However, Defendant is well qualified for the loan, provided extensive documentation of such, spent a great deal of time outlining the improvements to the area surrounding its real property holdings, and did apply for a loan.

27. "In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court 'accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *AmeriPro Funding, Inc.*, *Supra* at 848 F.3d 698, 701) (citing *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (citations and quotations omitted)). The Supreme Court explains, "'of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Four A's Inv. Co. v. Bank of Am. Corp.,* No. 09-00351-CV-W-FJG, 2010 WL 2720713, at *2 (W.D. Mo. July 6, 2010) (citing *Bell Atlantic Corp. v. Twombly, Supra,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)).

28. Defendant again cites to a myriad of cases that explain why applicants were not qualified to receive loans. (*See Coombs, Supra; Boardley, Supra; Bojorquez v. Wells Fargo Bank, N.A.,* 2013 WL 6055258 (D.Ore.2013*); Vasquez v. Bank of America, N.A.,* 2013 WL 6001924 (N.D. Cal. 2013*)..*) None of these cases are on point with the facts at issue here. It cannot be disputed that Plaintiff was qualified for the refinancing of the loan. Plaintiff has had the existing loan for years, and it is in good standing. Plaintiff has incoming cashflow from business ventures. Plaintiff has the ability to sell real property holdings, as it has in the past. All of the requirements for approval appear to be met by Plaintiff. It will be for Defendant to explain that, after all the supporting evidence to the contrary, Plaintiff is not qualified for the loan it requested and was given onerous terms of.

29. Defendant wants the court to believe that the proffered terms, the assignment of the option contract was in lieu of the lien on the existing property. This conclusion is not supported by any facts. Defendant's representative, in writing, explained that any loan would be "additionally be secured" by the option contract. There is no other conclusion to be made

besides the one made by Plaintiff; this assignment was *in addition* to the existing lien on the
property in the process of being refinanced.

30. Here, Defendant's offering of terms before completing the underwriting process is also
highly unusual. Similarly, asking Plaintiff to secure a loan with such large collateral, some ten-
times the value of the loan is also unusual based on Plaintiff's extensive experience in the field.
There were no explanations offered for the terms or timing given by Defendant's representative.
These facts are *highly* suggestive of foul play.

31. Plaintiff has met all the obstacles that traditionally keep discrimination claims from ever
seeing the justice of a courtroom. Unlike the authority Defendant cites to, there is no alternative
explanation for the high collateral request other than to keep Plaintiff from doing business with
Defendant. At the time of the terms being offered, Defendant's representative should be no
more than a means of communicating with the underwriting department. Defendant's
representative, the "Commercial Loan Officer," acts as a sales representative, trying to gain new
business for the bank, not a gatekeeper to bar such. The behavior of Defendant's representative
is highly unusual and calls a great deal of suspicion to their motive. Again, Plaintiff is very well
qualified for this loan. Plaintiff was simply looking for the best interest rate they could attain for
refinancing their loan. Defendant's actions, through their representative, would make any
reasonable person question whether Defendant wanted to do business with Plaintiff in the first
place.

32. Based on the facts in the First Amended Petition, Plaintiff has pled sufficient
information for the trier of fact, when accepting all facts as true, to understand that Defendant's
actions were not based on any typical analysis of a credit application. Even without discovery,
to understand the terms offered to similarly situated Anglo borrowers, the terms offered are

offensive and meant to keep Plaintiff's loan from ever being completed with Defendant, in

violation of the statute.

**ii. Plaintiff's Claim of Unlawful Handling of Plaintiff's Application is Sufficient to Survive Dismissal Under 15 U.S.C. § 1691c-2(D)(1).**

33. The ECOA provides that:

> Where feasible, no loan underwriter or other officer or employee of a financial institution, or any affiliate of a financial institution, involved in making any determination concerning an application for credit shall have access to any information provided by the applicant pursuant to a request under subsection (b) in connection with such application.

15 U.S.C. § 1691c-2(d)(1). While defendant is correct, no regulatory scheme has been

established yet by the board created by Congress, the intent of the statute is still relevant to

Plaintiff's claim. "In interpreting a statute or regulation, we first look to the statute or regulation's

plain language." *Lara v. Cinemark USA, Inc.*, 207 F.3d 783, 787 (5th Cir. 2000) (*See also United

States v. Raymer*, 876 F.2d 383, 389 (5th Cir.1989)). "Where the language is unambiguous, we

do not look beyond the plain wording of the regulation to determine meaning." *Copeland v.

Comm'r*, 290 F.3d 326, 332–33 (5th Cir.2002).

34. The purpose of § 1691-c2(d) is to eliminate the possibility of protected class-bias from

influencing the decision-makers in a financial transaction, as prohibited by the Equal Credit

Opportunity Act. By keeping underwriters, the ultimate decision-maker in a loan approval

process, out of marketing and sales, Congress is intending to keep the biases the statute was

intended to prevent from influencing the terms provided or the approval of the loan.

35. Defendant appears to be confused as to Plaintiff's claim. Plaintiff does not complain

that Defendant is not reporting minority status to the regulatory commission that has yet to be

established under the Consumer Financial Protection Board, as outlined in the letter to the Board

from 2011 Defendant cites to. Instead, Plaintiff has accused Defendant's loan officer, who participates in underwriting at Defendant's bank, of proffering unreasonable terms to Plaintiff based on Plaintiff's majority holders' race. The purpose of keeping bank underwriting personnel out of marketing and sales is obvious, to keep protected statuses from being considered a factor in a loan application process.

36. However, Defendant emphasizes "where feasible" in its Motion to Dismiss, suggesting that in the circumstances here it is not feasible to remove Defendant's representative from deciding the loan terms offered to Plaintiff. [Defendant's Motion, Doc. #14, par. 17, p. 9]. Defendant makes it clear that the loan is "still in underwriting" and that "if it were to be approved" there would need to be additional collateral. These statements indicate that Defendant's commercial loan officer, Representative Nam, is indeed offering terms and is involved in underwriting. This behavior leaves no opportunity for Plaintiff's race to be left out of the decision-making process, in violation of the statute.

37. Plaintiff has pled sufficient facts, when taken as true, to establish that Defendant's representative was highly involved in the underwriting process and in offering loan terms. Additionally, the involvement of Defendant's loan officer in the underwriting process created unreasonable, offensive loan terms that were motivated by racial biases. Plaintiff's claim should survive a Rule 12(b)(6) motion to dismiss.

**iii. Plaintiff's Claim of Discouragement is Sufficient to Survive Dismissal Under 12 C.F.R. § 202.4(B).**

38. "Regulation B," provides that "[a] creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a

prohibited basis a reasonable person from making or pursuing an application." *AmeriPro*

*Funding, Inc., Supra at, 708 (citing12 C.F.R. § 202.4(b))*.

39. Defendant cites to *Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL 786250, (N.D.

Tex. Dec. 15, 1997), where pertinent analysis made under the "no set of facts" standard is

regarding an employment discrimination claim. This case is distinguishable. In *Martinez*

Plaintiff's claim of discrimination did not survive a motion to dismiss as a matter of law. *Id.* at

3. The facts stated, interpreted as true at this stage in the litigation, established circumstances

previously decided by the court to be too far removed from the ultimate adverse employment

decision to establish a claim. *Id.*

40. Defendant also claims Plaintiff has "assum[ed] [the] value" of Plaintiff's property.

[Defendant's Motion par. 26, p. 12]. Plaintiff concedes that the most recent appraisal, attached

to the Original Petition, is outdated. However, as explained to Defendant's representative and

plead in the Amended Complaint, there have only been vast improvements to the area around

Plaintiff's property. Plaintiff has articulated four different ways the property has improved in its

claim. Defendant's observation of the assumed value of the property furthers Plaintiff's claim

that Defendant's proffering of terms, before completing underwriting, was meant to discourage

Plaintiff from further pursuing a loan with their institution. It would seem if a reasonable loan

officer was interested in doing business with a client, they would encourage a new appraisal of

the property being used as collateral if they had any discrepancy with the previous appraisal

prior to quoting onerous terms. Furthermore, the proffering of terms by Defendant without a

complete application seems frivolous and without any good faith as to the severity of Plaintiff's

need. These actions were meant to discourage Plaintiff.

41. Defendant accuses Plaintiff of "pedaling racist stereotypes." [Defendant's Motion par. 29, p. 3]. However offensive the facts of the claim may be, they are an unfortunate reality for Plaintiff. The purpose in illustrating Defendant's representative's race is to show the totality of the circumstances, and the complexities involved in race relations. While uncomfortable, the race of the surrounding community at the location of the bank, the location of Plaintiff's property, and Plaintiff's race are all critical factors in the analysis of plausibly racially motivated actions. Plaintiff asserts still, any reasonable person, let alone business owner, would be offended at the terms offered in writing by Defendant before the completion of underwriting and formal offer. This act of discouragement is clearly based on race, and unfortunately the race of Defendant's representative has validity here in this claim to at least shift the burden to Defendant to disprove the plausible theory. This claim should survive a motion to dismiss.

**C. There Is No Basis for Motion to Dismiss for Failure to State a Claim for Relief Under 42 U.S.C. §1981.**

42. 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). To establish a § 1981 claim for contractual discrimination, Plaintiffs must allege that:

> (1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute—here, making a contract. *See Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994). The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims. *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th

Cir. 2005). *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,* 869 F.3d 381, 386 (5th Cir. 2017).

43. In *Ceasar, v. Wells Fargo Bank* 1:18-CV-00479-MAC, 2020 WL 525384, at *2 (E.D. Tex. Jan. 31, 2020),the District Court has explained, "the court must accept the facts alleged in the complaint as true, [Plaintiff] has alleged a plausible violation of § 1981." (citations excluded). The court explained the facts that led to Plaintiff's success in his initial complaint:

> Wells Fargo denied him a personal loan several times. [Doc. No. 1, p. 2.] In response to Wells Fargo's motion to dismiss, Ceasar argues that Wells Fargo denied him loans based upon his age (66 years old) and race because he applied for loans on more than one occasion, was qualified for the loans, but denied credit despite his qualifications. Doc. No. 21, p. 6. Therefore, Ceasar alleges that he was "treated differently" than others in Wells Fargo's lending practices.

*Id*. The Eastern District of Texas ruled that, based upon these allegations, "which are construed as true, the court finds that Ceasar has sufficiently alleged an ECOA claim." *Id. (see In re Katrina Beaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. DART, Supra at 467*).

44. Defendant cites to *Boardley, Supra,* which imposes a pleading standard that is not followed by the Fifth Circuit as illustrated above. In *Boardley*, Plaintiff's claim failed because the facts were never established that plaintiffs there were qualified to receive the line of credit they requested. *Boardley*, *Supra* at 710. Here, Plaintiff is highly qualified for the refinancing of the loan requested. The sheer amount of collateral available in real property holdings is almost ten times the value of the loan requested. Additionally, the terms proffered by Defendant here were done so before the completion of the application information gathering and underwriting. The terms given by Defendant to secure a loan were blatantly racist in motivation, with the goal to deter Plaintiff from doing business with Defendant's institution.

45. Plaintiff's argument is identical to the arguments raised under ECOA claim. For the same reasons as asserted in the ECOA analysis, Defendants claims that the cause of action under this statute should be dismissed, identical to the statutory requirements and pleading regime of ECOA, fail.

## III. PRAYER FOR RELIEF

WHEREFORE, ALL PREMISES, Movant prays that the Court order deny the Motion to Dismiss, and for such other and further relief to which it may be entitled.


Respectfully Submitted


/s/ Kevin S. Wiley, Sr.

THE WILEY LAW GROUP, PLLC

Kevin S. Wiley, Sr.
State Bar No. 21470700
325 N. St. Paul Street, Suite 2250
Dallas, Texas 75201
Email: kwiley@wileylawgroup.com
Office: (214) 954-9905
Mobile: (214) 537-9572
Fax: (972) 449-5717

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that I have attempted to discuss this motion to dismiss by agreement, and the

attorney for the Defendant has not agreed to the relief requested.

<u>/**s**/Kevin S. Wiley, Sr.</u>

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the above and foregoing has been served on the

counsel to the defendant to the address below:

Tom ("Trey") Hill Crawford, III
Texas State Bar No. 24059623
tcrawford@cwl.law
Jason T. Weber
Texas State Bar No. 24075251
jweber@cwl.law

CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500
Facsimile: (214) 817-4509
Counsel for Defendants TXRB Holdings, Inc.
and Texas Republic Bank, N.A.

<u>/s/Kevin S. Wiley, Sr.</u>