IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| R.K.C.J., LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-cv-00848-N |
| | § | Judge David C. Godbey |
| Texas Republic Bank, N.A., | § | |
| | § | |
| *Defendant*. | § | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) (DKT. 14)**

Defendant Texas Republic Bank, N.A. (*"TRB"*) files this reply in support of *Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6)* (Dkt. 14) (the "*Motion*") and would respectfully show as follows:

**A.  Plaintiff's Response Improperly Introduces Allegations Outside Of The Pleadings**

1.     When adjudicating a motion brought under FED. R. CIV. P. 12(b)(6), a court cannot look beyond the face of the pleadings. *E.g.*, *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008); *Keith v. Brown*, No. 3:12-CV-2673-N BF, 2014 WL 798377, at *2 (N.D. Tex. Feb. 27, 2014) (Godbey, J.) ("[I]n resolving the Rule 12 (b)(6) controversy, a court does not look beyond the face of the pleadings . . . ."). Nonetheless, Plaintiff R.K.C.J., LLC (*"Plaintiff"*) has introduced the following allegations in its *Response* (Dkt.15)—none of which are asserted in *Plaintiff's First Amended Complaint* (Dkt. 10) or attachments (Dkts. 10-1–10-6):

- "These improvements to the surrounding land were carefully explained to Defendant through its representative."[1]

---

[1] Pl.'s Resp., ¶ 11 (Dkt. 15).

- "The idea that defendant was requiring almost 1000% collateral to secure a refinancing was baffling to Plaintiff and smacked of pure racism."[2]

- "Never had Plaintiff, Mr. Pitre, a Black business owner from South Dallas, been so overtly insulted by terms like Defendant's, especially before the loan had completed underwriting."[3]

- "[T]his assignment was *in addition* to the existing lien on the property in the process of being refinanced."[4]

- "Defendant's offering of terms before completing the underwriting process is also highly unusual."[5]

- "Similarly, asking Plaintiff to secure a loan with such large collateral, some ten-times the value of the loan is also unusual based on Plaintiff's experience in the field."[6]

- There were no explanations offered for the terms of timing given by Defendant's representative."[7]

- "Defendant's representative, the 'Commercial Loan Officer,' acts as a sales representative, trying to gain new business for the bank, not a gatekeeper to bar such."[8]

- "Defendant makes it clear that the loan is 'still in underwriting' and that 'if it were to be approved' there would need to be additional collateral."[9]

- "[A]s explained to Defendant's representative and plead [*sic*] in the Amended Complaint, there have been vast improvements to the area around Plaintiff's property."[10]

- "Defendant's observation of the assumed value of the property furthers Plaintiff's claim that Defendant's proffering of terms, before completing underwriting, was meant to discourage Plaintiff from further pursuing a loan with their institution."[11]

- "[I]f a reasonable loan officer was interested in doing business with a client, they would encourage a new appraisal of the property being used as collateral if they had any discrepancy with the previous appraisal prior to quoting onerous terms."[12]

---

[2] *Id.*
[3] *Id.*
[4] *Id.* at ¶ 29 (emphasis original).
[5] *Id.* at ¶ 30.
[6] *Id.*
[7] *Id.*
[8] *Id.* at ¶ 31.
[9] *Id.* at ¶ 36.
[10] *Id.* at ¶ 40.
[11] *Id.*
[12] *Id.*

2.     Accordingly, TRB objects to each of the above-cited assertions, which may not be considered by the Court. *Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2013 WL 655059, at *5 (N.D. Tex. Feb. 5, 2013), *report and recommendation adopted*, 3:12-CV-212-N, 2013 WL 655054 (N.D. Tex. Feb. 22, 2013) (Godbey, J.) ("Because Plaintiff raises these allegations for the first time in response to Defendants' motion, they are not considered.").

**B.  Plaintiff's Continually-Changing Allegations Have Become Even More Contradictory— And Are Now Irrevocably Irreconcilable**

3.     Plaintiff originally represented to the Court (in its *Original Complaint* and sworn declaration) that the alleged discriminatory terms were <u>conveyed verbally</u>.[13] Plaintiff has since changed its narration, now alleging that discriminatory terms were <u>conveyed in writing</u>.[14] Yet, this is not even Plaintiff's most flagrant self-contradiction.

4.     Plaintiff's entire lawsuit is premised on the theory that TRB expressly represented, <u>in writing</u>, that the tentative loan terms would require pledging collateral "<u>in addition to</u>" a priority lien on the entire underlying property:

**Representation in *Plaintiff's First Amended Petition***

> 11. In response to this application, Defendant, through Mr. Nam, responded by email with additional questions about rental payments, again requested tax documents, and in this same email, without response to questions by Defendant, Mr. Nam informed Plaintiff that, while the loan was still in underwriting and more information was needed, any loan provided would need to additionally be secured by a complete assignment of the option agreement with the Texas Railroad Commission (Exhibit "D") and an additional guaranty for Skyview Ranch. In summary, this would be interpreted to mean that Texas Republic Bank was requiring $13 million in real property lien and collateral to secure the refinancing of $1.6 million existing loan and lien, and a line of credit of $200,000.

**Representation in Plaintiff's Response**

> 29. Defendant wants the court to believe that the proffered terms, the assignment of the option contract was in lieu of the lien on the existing property. This conclusion is not supported by any facts. Defendant's representative, in writing, explained that any loan would be "additionally be secured" by the option contract. There is no other conclusion to be made

---

[13] Pl.'s Orig. Comp., ¶ 9 (Dkt. 1); *see also* Dec. Robert J. Pitre, p. 2 (Dkt. 1-1).
[14] Pl.'s 1st Am. Comp., ¶¶ 11, 16 (Dkt. 10); *see also* Dec. Robert J. Pitre, p. 2 (Dkt. 10).

**BUT SEE (also in Plaintiff's Response)**[15]

> Petition. In an email dated January 31, 2020, along with additional questions about the property and financial questions, Defendant provided the following terms:
>
> > "We are still underwriting, but if we were to approve the loan, we would require:
> >
> > - assignment on the sales contract between the Texas Railroad Commission and RKCJ.
> >
> > - Skyview Ranch being the operating company, would need to be an additional guarantor.
> >
> > -2019 year-end Financial Statements for both RKCJ and Sky-View."

5. The terms that Plaintiff has quoted in the third screenshot above are lifted directly from the e-mail that Plaintiff relies on and constitute the entirety of the alleged discriminatory terms (which, again, Plaintiff claims were *all* reduced to writing).[16] Contrary to Plaintiff's representations elsewhere, nowhere in the e-mail is there *any* discussion of a loan being **"additionally"** secured by anything.[17] The word "addition" is non-existent—as is true for any reference to a "lien." Stated differently, Plaintiff has represented to this Court that a priority lien on real property (which Plaintiff has unilaterally valued at $10 million) was a written term conveyed to it—even though this never occurred (as evidenced by the language quoted by Plaintiff in its *Response*). This alone is fatal to Plaintiff's entire case and incapable of being reconciled because Plaintiff has already changed its story once: "Defendant responded in writing, not verbally as misstated in the Original Petition."[18]

---

[15] Pl.'s Resp., ¶ 10 (Dkt. 15).
[16] "On January 31st, in response to this application, Defendant thru Mr. Nam responded by email . . . ." *See* Dec. Robert J. Pitre, p. 2 (Dkt. 10); Pl.'s 1st Am. Comp., ¶ 11.
[17] *See* Pl.'s Resp., ¶ 10 (Dkt. 15). When considering a Rule 12(b)(6) motion, the Fifth Circuit has held that a court may consider documents outside the complaint when they are (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In Re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Tex. Health & Human Services Comm'n v. United States*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016) (Godbey, J.). Because Plaintiff makes reference to an e-mail (central to its case) and quoted it verbatim in its *Response*, this exception would be equally applicable—warranting inclusion of the referenced document in the Reply. Accordingly, a true and correct copy of the January 31, 2020 e-mail that is referenced and quoted in Plaintiff's Response (Dkt. 15, ¶ 10) is attached hereto as Exhibit 1. By attaching this document, TRB is in no way attempting to convert its *Motion* to a dispositive motion brought under FED. R. CIV. P. 56.
[18] Pl.'s Resp., ¶ 10 (Dkt. 15).

### C. Plaintiff's ECOA Claims Remain Facially Deficient

6. There are two global defects in Plaintiff's substantive counterarguments:

7. *First*, Plaintiff's core claim against TRB is a lending discrimination claim under the ECOA.[19] However, its *Response* fails to identify any case opinion where a court allowed an ECOA claim to proceed notwithstanding the plaintiff's (1) premature termination of its application; or (2) failure to identify the less "onerous" terms allegedly available to white applicants.[20] Ignoring these defects, Plaintiff instead—unsuccessfully—attempts to distinguish its case from the legal authorities cited by TRB.

8. By way of example, Plaintiff argues that *Jones v. Caliber Homes Loans, Inc.*, No. CV-18-1023-SDD-EWD, 2019 WL 3366104 (M.D. La. July 25, 2019) is inapplicable because it involved reverse redlining (a separate theory of recovery under the ECOA).[21] This argument is misguided—the pleading standards articulated by *Iqbal/Twombly* (and *Jones'* application to an ECOA claim) are equally applicable regardless of what theory of discrimination is alleged. Moreover, Plaintiff makes zero effort to distinguish (or even address) *Four A's Inv. Co., L.L.C. v. Bank of Am. Corp.*, No. 09-00351-CV-W-FJG, 2010 WL 2720713, at *5 (W.D. Mo. July 6, 2010), where the applicant, similar to Plaintiff, prematurely withdrew its loan application (a fact the court found fatal to the plaintiff's ECOA claim, even at the motion to dismiss stage).[22]

9. *Second*, Plaintiff argues that at the pleading stage, "the plaintiff is under no obligation to prove anything."[23] This argument misses the point entirely. TRB does not suggest that Plaintiff must "prove" anything at this stage. Indeed, the terms "prove" and "proof" are not

---

[19] *See* Pl.'s 1st Am. Compl. ¶¶ 17–25 (Dkt. 10).
[20] *See* Pl.'s Resp. ¶¶ 15–41 (Dkt. 15).
[21] *See id.* at ¶ 25.
[22] Def.'s Mot., ¶ (Dkt. 14).
[23] Pl.'s Resp., ¶ 19 (Dkt. 15).

even referenced in TRB's *Motion*.[24] Plaintiff's fixation on this non-issue underscores its conflation of the terms "plead" and "proof." While Plaintiff does not have a burden of proof at the pleading stage, it does have an obligation to adequately allege a facially plausible ECOA claim—which it has failed to do despite multiple attempts (and an opportunity to amend its complaint). Specifically:

- Plaintiff does not adequately allege it was qualified for less "onerous" credit terms than those purportedly offered by TRB, nor does it explain how it was discriminatory for a bank to request an option agreement (*i.e.*, liquidated collateral) instead of real property (which has many more barriers to collection) as collateral.[25]

- Plaintiff offers no factual allegations regarding the requirements for necessary credit approval on the less "onerous" terms Plaintiff surmises were available to white applicants.[26]

- Plaintiff has failed to identify the less "onerous" terms allegedly available to white applicants.[27]

- Plaintiff doe not plead the specific material terms of the lending transaction—must less the terms Plaintiff was seeking (*e.g.*, payment terms, interest rate, duration, type of loan, collateral, *etc.*).[28]

10. In short, simply alleging disparate treatment is not enough—Plaintiff must identify the terms that are allegedly disparate (*e.g.*, how others outside the protected class were allegedly treated better). *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (ADEA/Title VII case involving *McDonnell Douglas* framework; affirming Rule 12(b)(6) dismissal where plaintiff failed to alleged sufficient facts on the ultimate elements if a disparate treatment claim). Plaintiff's threadbare and conclusory allegations fail to even show a sheer possibility that TRB has acted unlawfully.[29]

---

[24] *See* Def.'s Mot. ¶¶ 9–30 (Dkt. 14).
[25] *See* Pl.'s 1st Am. Compl. ¶¶ 10 & 12 (Dkt. 10).
[26] *See id.*
[27] *See id.* at ¶ 12.
[28] *See id.*
[29] *See id.*

### *Theory 1 – Anti-Discrimination*

11. Plaintiff's reliance on the myriad of exhibits attached to its *First Amended Complaint* (Dkt. 10) are a red herring because none of the documents (or allegations in the complaint) touch on the third element of an ECOA claim: "[Element 3] the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction <u>on the basis of the plaintiff's membership in a protected class</u>." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705 (5th Cir. 2017) (emphasis added). Simply alleging that Plaintiff was discriminated against because its majority members are African American is not sufficient.

12. Even at the pleading stage, Plaintiff must adequately allege facts that allow the Court to draw the reasonable inference that TRB discriminated against Plaintiff on the basis of its protected class. *See id.* Courts have recognized that this can be shown through, *inter alia*, alleging (1) "that the applicant was qualified to receive credit and was denied credit, or offered less favorable terms, despite being qualified;" or (2) "that persons not within the protected class were granted extensions of credit by the defendant." *E.g.*, *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 980 (D. Or. 2016). Neither of these theories have been adequately alleged by Plaintiff.

- **Alleging Denial Of Credit Requires Identification Of Credit Terms Sought.** A large segment of Plaintiff's *First Amended Complaint* is devoted to discussing Plaintiff's credit score, income, and net worth. Even if these allegations were true, Plaintiff has still not identified (1) the credit terms it sought; (2) the credit terms it was qualified for based upon its purported credit score, income, and net worth; or (3) the credit terms it was denied notwithstanding its purported credit score, income and net worth. *See Egbukichi*, 184 F. Supp. 3d at 980. Likewise, Plaintiff's *Response* glosses over these defects—which were highlighted in the *Motion*—and fails to articulate how they were alleged. Stated differently, while Plaintiff goes to great lengths to allege that it and its owners are wealthy and attractive clients for banks, the *First Amended Complaint* is silent on the resulting <u>qualifications</u> (*e.g.*, the credit terms qualified for, the credit terms sought, etc.), which are the core focus of this issue.

- **Alleging Disparate Treatment Requires Identification Of Others Outside Protected Class Who Were Treated More Favorably.** Plaintiff surmises that "any

Anglo borrower of similar means and credit qualifications" would have been treated differently; yet, Plaintiff fails to articulate (1) *who* outside the protected class has actually been treated more favorably; (2) *how* others outside the protected class would have been treated more favorably; or (3) the *credit terms* that have been allegedly offered to others outside the protected class. Recognizing this defect, Plaintiff claims that discovery is necessary in order to answer the questions above.[30] However, this is not the appropriate standard, nor does it excuse Plaintiff's pleading defects. In similar contexts, courts have dismissed disparate treatment cases under Rule 12(b)(6) where the plaintiff has failed to identify similarly situated individuals outside the protected class were treated more favorably. *E.g.*, *Davis v. Potter*, No. 3:04-CV-2183-BH, 2006 WL 929232, at *5 (N.D. Tex. Apr. 10, 2006).[31]

### Theory 2 – Unlawful Handling

13. Even though Plaintiff concedes that the Consumer Financial Protection Board (*"CFPB"*) has still not issued any guidance or rules related to 15 U.S.C. § 1691c-2,[32] it claims—without citing any legal authority—that the statute remains actionable. This directly contradicts the position taken by the CFPB (which has been delegated rule-making authority to interpret and enforce the ECOA).[33] Likewise, the Stipulated Settlement Agreement and Order cited by TRB (which has nationwide implications) recognizes that 15 U.S.C. § 1691c-2 does not go into effect until the CFPB issues a Section 1071 Final Rule, which has not yet occurred.[34]

14. Finally, even if 15 U.S.C. § 1691c-2 were in effect, the end result (dismissal) remains unchanged. *First*, 15 U.S.C. § 1691c-2 does not categorically forbid underwriters from meeting with loan applicants (as Plaintiff seems to suggest). *Second*, Plaintiff has still not identified the statutorily/regulatorily defined safeguards and procedures that TRB allegedly

---

[30] Pl.'s Resp., ¶ 13 (Dkt. 15).
[31] *See, e.g.*, *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) ("Raj's complaint and speculation did not allege any facts, direct or circumstantial, that would suggest LSU's actions were based on Raj's race or national origin or that LSU treated similarly situated employees of other races or national origin more favorably. Because Raj has failed to raise his right to relief above the speculative level, we affirm the district court's dismissal of Raj's complaint under Rule 12(b)(6) for failure to state a claim." (citation and internal quotation marks and bracket omitted)); *Hanks v. Shinseki*, No. 3:08-CV-1594-G, 2009 WL 2002917, at *3 (N.D. Tex. July 9, 2009) (a complaint which merely stated that others were similarly situated but did not state who the employees were, what opportunities they were given, or whether they were outside the protected class was insufficient to survive a Rule 12(b)(6) challenge).
[32] Pl.'s Resp., ¶ 33 (Dkt. 15).
[33] Def.'s Mot., ¶ 19 (Dkt. 14).
[34] *Id.* at ¶ 22.

violated under this statute—nor can it when the CFPB has not yet even weighed in on this issue. *Third*, Plaintiff's assertion that TRB's loan officer was involved in sales and marketing[35] is improper for two reasons: (1) this assertion is not pled in the *First Amended Complaint*; and (2) the assertion contradicts Plaintiff's own pleading—which indicates that Plaintiff sought out TRB.[36]

### Theory 3 – Unlawful Discouragement

15. Unlawful discouragement focuses on whether a <u>reasonable person</u> would be discouraged from pursing the application further. 12 C.F.R. § 202.4(b). Again, Plaintiff fails to explain why a reasonable person would prematurely terminate its application without first asking for further clarification on the necessary collateral or loan terms. *E.g.*, *Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997) ("the Court need not accept as true conclusionary allegations, legal characterizations, unreasonable inferences or unwarranted deductions of fact").

16. Separately, and even more problematic, 12 C.F.R. § 202.4(b) requires a "prohibited basis" (*e.g.*, discriminatory animus) for the alleged unlawful discouragement. Plaintiff does not dispute that the only discriminatory animus offered by it is the loan officer's race (Japanese)—which Plaintiff concludes equates with racism.[37] Remarkably, Plaintiff has doubled-down on this stereotyping in its *Response*: "However offensive the facts of the claim may be, they are an unfortunate reality for Plaintiff. . . . [U]nfortunately the race of Defendant's representative has validity here in this claim to at least shift the burden to Defendant to disprove the plausible theory."[38] Simply put, an individual's race has no bearing on whether that person is racist and it certainly does nothing to demonstrate a discriminatory animus here.

---

[35] Pl.'s Resp., ¶ 31 (Dkt. 15).
[36] Pl.'s 1st Am. Compl., ¶ 5 (Dkt. 10).
[37] Pl.'s Resp., ¶ 41 (Dkt. 15).
[38] *Id.* (emphasis added).

### D. Plaintiff's Section 1981 Claim Remains Deficient

17. As detailed in the *Motion*, Plaintiff's Section 1981 claim fails for the same reasons as its ECOA claims.[39] Plaintiff's reliance on *Ceasar v. Wells Fargo Bank*, No. 1:18-CV-00479-MAC, 2020 WL 525381 (E.D. Jan. 31, 2020) is misplaced. *Ceasar* involved allegations of racial epithets: "we ain't refunding [expletive] nigg** [because] it is our policy." *Id.* at *1. The court found such epithets to be a significant factor in its decision to deny dismissal: "Racial epithets, such as these, demonstrate racial animus, and Ceasar alleges that Wells Fargo refused to honor the insufficient funds wavier due to his race." *Id.* Unlike *Ceasar*, there are not racial epithets at issue in this case. The only racial animus offered by Plaintiff is its own – suggesting that the loan officer's race (i.e., Japanese) is, in and of itself, indicative of racism because "some people of Japanese descent believe that they are a superior race, based on the history of their nation and the American takeover of such after World War II."[40] Again, such racist stereotyping has no place with this Court, does nothing to advance Plaintiff's claims, and has a negative impact on legitimate discrimination claims.

### PRAYER

For the foregoing reasons, *Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6)* (Dkt. 14) should be, in all things, granted. Further, TRB requests that the Court grant it all such other relief, in law or in equity, to which he may be justly entitled, including its attorneys' fees and costs incurred in defending Plaintiff's causes of action.

---

[39] Def.'s Mot. ¶¶ 31–34 (Dkt. 14).
[40] Pl.'s 1st Am. Compl., ¶ 15 (Dkt. 10).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS            PAGE 10
PLAINTIFF'S FIRST AMENDED COMPLAINT

Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

By: */s/ Tom H. Crawford, III*
    **Tom ("Trey") H. Crawford, III**
    Texas State Bar No. 24059623
    tcrawford@cwl.law
    **Jason T. Weber**
    Texas State Bar No. 24075251
    jweber@cwl.law

    1700 Pacific Avenue, Suite 2390
    Dallas, Texas 75201
    Telephone: (214) 817-4500
    Facsimile: (214) 817-4509

    *Counsel for Defendant*
    *Texas Republic Bank, N.A.*

## CERTIFICATE OF SERVICE

Pursuant to FED. R. CIV. P. 5(b)(2)(e) and 5(b)(3), I hereby certify that a true and correct copy of the foregoing document was filed electronically on this 20th day of July 2020. Parties may access this filing through the Court's system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Trey Crawford*
Trey Crawford